IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

AMANDA NORRIS, *et al*,

   *Plaintiffs*

   v.                                                                        Civil No. ELH-20-3315

PNC BANK, N.A., *et al*,

   *Defendants.*

## MEMORANDUM

This Memorandum resolves a motion filed by the self-represented plaintiffs, Amanda Norris and Joseph Norris III, on December 3, 2021. ECF 104 (the "Motion"). They seek reconsideration of the Court's Memorandum (ECF 94) and Order (ECF 95) of November 12, 2021, denying, *inter alia*, plaintiffs' motion to amend their Complaint (ECF 68). Alternatively, plaintiffs seek to amend their Complaint to add a claim under Md. Code (2015 Repl. Vol., 2021 Supp.), § 7-113 of the Real Property Article ("R.P."), concerning residential evictions. *Id*. at 6-9; ECF 104-3; ECF 104-5. The Motion is supported by various exhibits. ECF 104-1 to ECF 104-5.[1]

Safeguard Properties Management, LLC ("Safeguard") and PNC Bank, N.A. ("PNC"), defendants, oppose the Motion. ECF 106 (Safeguard); ECF 113 (PNC). Plaintiffs have replied to PNC's opposition. ECF 123.

No hearing is necessary to resolve the Motion. *See* Local Rule 105.6. For the reasons that follow, I deny the Motion.

---

[1] Certain exhibits to the Motion were filed under seal as proposed sealed exhibits, because they were designated as confidential according to the Confidentiality Order in this case. *See* ECF 104-1; ECF 104-2; ECF 105 (the sealed exhibits). I address the issue of sealing, *infra*.

## I. Procedural History

I recount only those aspects of the procedural history of this case that are pertinent here.

On October 14, 2020, plaintiffs filed suit against Safeguard and PNC in the Circuit Court for Baltimore County, alleging breach of contract, trespass, and invasion of privacy/intrusion upon seclusion. ECF 2 (the "Complaint"). PNC serviced plaintiffs' mortgage, on which plaintiffs defaulted. *Id*. ¶¶ 2, 4. Plaintiffs claim alleged unauthorized entries into their house by agents of defendants. *Id*. ¶ 7. The entries allegedly occurred between October and December of 2017, "under the pretext of protecting" the home, "because it was purportedly reported vacant." *Id*.

PNC, with the consent of Safeguard, removed the case to this Court on November 16, 2020, on the basis of diversity jurisdiction, pursuant to 28 U.S.C. §§ 1332 and 1441. ECF 1 ("Notice of Removal"). Safeguard answered the Complaint on November 19, 2020. ECF 5. PNC answered on December 4, 2020. ECF 13.

On December 9, 2020, I entered a Scheduling Order. ECF 14. Among other things, I set a discovery deadline of May 6, 2021, and a dispositive motion deadline of June 7, 2021. After a series of extensions (ECF 33; ECF 47; ECF 53), discovery ended on September 24, 2021, and the deadline for dispositive motions was extended to October 18, 2021.

In the interim, on June 8, 2021, I referred the case to Magistrate Judge Beth Gesner for discovery and related scheduling matters. ECF 41. Several discovery disputes ensued involving plaintiffs and Safeguard (*see* ECF 55; ECF 58; ECF 59), as well as plaintiffs and PNC. *See* ECF 57; ECF 60. In general, plaintiffs asserted that defendants' discovery production was inadequate. *See* ECF 84 at 1, 4.

Safeguard moved for summary judgment on September 27, 2021. ECF 63. PNC moved for summary judgment on October 15, 2021. ECF 76. After Safeguard moved for summary

judgment, plaintiffs requested permission to respond to Safeguard's motion within 30 days of the filing of PNC's then impending summary judgment motion. ECF 71. The Court granted the motion, in part; plaintiffs were granted 21 days to respond, dating from the filing of PNC's summary judgment motion. ECF 72. This ultimately produced a deadline of November 8, 2021.

Plaintiffs then moved to stay the filing of their response to defendants' summary judgment motions until the resolution of then-pending discovery disputes. ECF 80. In the alternative, plaintiffs sought a seven-day extension to respond. *Id*. Defendants opposed the stay request, but did not oppose the extension request. ECF 82. I denied the stay request but granted the seven-day extension, until November 15, 2021. ECF 83.

Also on September 27, 2021, plaintiffs filed a motion for leave to amend the Complaint (ECF 68, the "Motion to Amend"), and they submitted 14 exhibits. ECF 68-1 to ECF 68-14.[2] The Motion to Amend sought to add counts under Maryland "Foreclosure Law;" the Maryland Consumer Protection Act ("MCPA"), Md. Code (2013 Repl. Vol., 2021 Supp.), § 13-301 *et seq*. of the Commercial Law Article; the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*.; the Maryland Consumer Debt Collection Act, C.L. § 14-201 *et seq*.; and R.P. § 7-113, which pertains to residential evictions. ECF 68-14 (redlined version), ¶¶ 45-86. Both Safeguard (ECF 70) and PNC (ECF 74) opposed the Motion to Amend. Plaintiffs replied to Safeguard (ECF 79) and to PNC. ECF 81.

Judge Gesner resolved the discovery disputes in a ruling on November 1, 2021. ECF 84. She required the defendants to supplement or provide certain discovery by November 15, 2021.

---

[2] Plaintiffs originally attempted to file their Motion to Amend on September 24, 2021, but it was returned by the Court because it did not contain an original signature, case caption with parties listed, or comparison copy. ECF 65. Although plaintiffs successfully filed the Motion to Amend on September 27, 2021, it was not docketed until September 29, 2021. *See* Docket.

*Id*. at 4, 6. Specifically, Judge Gesner ordered Safeguard to supplement its responses to three of plaintiffs' interrogatories, so as to identify more specifically the documents and information noted in its responses; respond to one of plaintiffs' interrogatories, but for a reduced time period; produce a complete, unredacted version of an insurance policy, as requested by plaintiffs; and produce a privilege log. *Id*. at 1-4. And, Judge Gesner ordered PNC to supplement its responses to seven of plaintiffs' interrogatories, so as to identify more specifically the documents and information noted in its responses; respond to one of plaintiffs' interrogatories, but for a reduced time period; and produce a privilege log. *Id*. at 4-6.

On November 9, 2021, plaintiffs moved for a 60-day extension of the deadline to oppose defendants' motions for summary judgment. ECF 89. They argued that the forthcoming discovery was needed for their opposition, and wanted time to review the material. *Id*. at 1-3. They also cited a desire to make "inquiries" as to "outstanding issues that Judge Gesner did not address," such as their desire to take written depositions. *Id*. at 2.

Safeguard (ECF 91) and PNC (ECF 92) responded in opposition. They contended that the forthcoming material had no bearing on plaintiffs' ability to respond to their respective summary judgment motions, and noted the extensions that plaintiffs had already received. ECF 91 at 2-3; ECF 92 at 1-3.

In a Memorandum (ECF 94) and Order (ECF 95) of November 12, 2021, I denied defendants' summary judgment motions as premature, and without prejudice, in view of Judge Gesner's ruling ordering defendants to provide additional discovery. I gave defendants until December 15, 2021, to file a second round of summary judgment motions. In addition, I ordered plaintiffs to file their oppositions to defendants' summary judgment motions within 28 days of the date on which the later of the summary judgment motions was filed.

In the same decision, I denied plaintiffs' Motion to Amend. ECF 94 at 6-9. I concluded that permitting the Amended Complaint would be unduly prejudicial to defendants, because it was filed at the close of discovery and just as defendants were moving for summary judgment. *Id*. at 9. In particular, the proposed claims involved new theories with new elements that would significantly change the character of the litigation and entitle defendants to additional discovery, but did not appear to be the product of facts uncovered during discovery. *Id*. at 7-9.

Plaintiffs filed this Motion on December 3, 2021. Safeguard filed its second summary judgment motion on December 14, 2021. ECF 109. PNC filed its second summary judgment motion on December 15, 2021. ECF 110. Defendants' motions are virtually identical to their original summary judgment motions. By Memorandum (ECF 120) and Order (ECF 121) of January 3, 2022, I denied plaintiffs' motion for a 45-day extension to respond to defendants' second summary judgment motions, but granted them an extension until January 26, 2022. Plaintiffs have also submitted various correspondence to Judge Gesner in an attempt to raise additional discovery issues. *See* ECF 107; ECF 108; ECF 115; ECF 122.

## II. Legal Standard

The parties disagree over which provision of the Federal Rules of Civil Procedure, and which legal standard, applies to the Motion.

Plaintiffs' Motion is filed under Fed. R. Civ. P. 60(b)(6), which relates to relief from a final judgment, order, or proceeding. ECF 104 at 1. Safeguard responded with reference to the same rule, while also citing Fed. R. Civ. P. 59(e), which relates to motions to alter or amend a judgment. ECF 106 at 3-5. PNC, for its part, argues that the Motion is governed by Fed. R. Civ. P. 54(b), relating to interlocutory orders. ECF 113 at 1. And, in their reply, plaintiffs continue to contend that Fed. R. Civ. P. 60 applies. ECF 123 at 1-2.

In my view, PNC is correct. Rules 59 and 60 relate to a final judgment. A denial of a motion to amend, while a case is ongoing, is not a final judgment. Instead, such a ruling is an interlocutory one, because it adjudicates "fewer than all the claims or the rights and liabilities of fewer than all the parties." Fed. R. Civ. P. 54(b). And, an order "that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." *Id*.

The Fourth Circuit has distinguished between Rule 54(b) and Rule 59(e), which governs reconsideration of final judgments, explaining that Rule 54(b) "involves broader flexibility" to account for new facts and arguments as the litigation unfolds. *See Carlson v. Bos. Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017); *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514-15 (4th Cir. 2003). However, the Fourth Circuit has admonished that "the discretion afforded by Rule 54(b) 'is not limitless,'" and the Court has "'cabined revision pursuant to Rule 54(b) by treating interlocutory rulings as law of the case.'" *U.S. Tobacco Coop. Inc. v. Big S. Wholesale of Virginia, LLC*, 899 F.3d 236, 256 (4th Cir. 2018) (quoting *Carlson*, 856 F.3d at 325).

The law of the case doctrine "generally provides that 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *Musacchio v. United States*, 557 U.S. 237, 244-45 (2016) (quoting *Pepper v. United States*, 562 U.S. 476, 506 (2011)); accord *Arizona v. California*, 460 U.S. 605, 618 (1983); *Graves v. Lioi*, 930 F.3d 307, 318 (4th Cir. 2019); *Carlson*, 856 F.3d at 325; *TFWS, Inc. v. Franchot*, 572 F.3d 186, 191 (4th Cir. 2009). The doctrine's effect is to bar a party from resurrecting issues that were previously decided or "'decided by necessary implication.'" *United States v. Lentz*, 524 F.3d 501, 528 (4th Cir. 2008) (quoting *Sejman v. Warner-Lambert Co., Inc.*, 845 F.2d 66, 69 (4th Cir. 1988)).

In so doing, the law of the case doctrine advances the interests of efficiency, judicial economy, and finality. *See Christianson v. Colt Indus. Oper. Corp.*, 486 U.S. 800, 816 (1988) (observing that the doctrine safeguards the "efficiency of the judicial process by protecting against the agitation of settled issues"); *United States v. Philip Morris USA Inc.*, 801 F.3d 250, 257 (D.C. Cir. 2015) (noting that the law of the case "reflects the understanding that 'inconsistency is the antithesis of the rule of law'") (citation and alteration omitted).

When applied to a court's interlocutory rulings, the law of the case doctrine "is not an 'inexorable command' but rather a prudent judicial response to the public policy favoring an end to litigation." *Sejman*, 845 F.2d at 68 (citation omitted). Accordingly, the Fourth Circuit has instructed that a court should revise an interlocutory order only to account for "'(1) a subsequent trial producing substantially different evidence; (2) a change in applicable law; or (3) clear error causing manifest injustice.'" *Tobacco Coop.*, 899 F.3d at 256 (quoting *Carlson*, 856 F.3d at 325).

The first of these bases "account[s] for potentially different evidence discovered during litigation." *U.S. Tobacco Coop.*, 899 F.3d at 256 (quoting *Carlson*, 856 F.3d at 325). By its terms, however, this ground refers to evidence discovered *during* litigation, not simply to material that a party could have offered initially, but chose not to present. *See Carlson*, 856 F.3d at 326 (affirming denial of motion for reconsideration of summary judgment when testimony cited by movant was available well before summary judgment briefing). "[A] party who fails to present his strongest case in the first instance generally has no right to raise new theories or arguments in a motion to reconsider." *United States v. Duke Energy Corp.*, 218 F.R.D. 468, 474 (E.D.N.C. 2003) (quoting *Fidelity State Bank, Garden City, Kan. v. Oles*, 130 B.R. 578, 581 (D. Kan. 1991)) (alteration mine).

The Fourth Circuit has also colorfully explained how difficult it is to meet the third basis for reconsideration. It has said: "As we have noted on more than one occasion, '[a] prior decision does not qualify for th[e] third exception by being just maybe or probably wrong; it must strike us as wrong with the force of a five-week-old, unrefrigerated dead fish. It must be dead wrong.'" *U.S. Tobacco Coop.*, 899 F.3d at 258 (quoting *TFWS, Inc.*, 572 F.3d at 194) (alterations in *U.S. Tobacco Coop.*). In other words, "[a] motion for reconsideration is 'not the proper place to relitigate a case after the court has ruled against a party, as mere disagreement with a court's rulings will not support granting such a request.'" *Lynn v. Monarch Recovery*, 953 F. Supp. 2d 612, 620 (D. Md. 2013) (quoting *Sanders v. Prince George's Pub. Sch. Sys.*, RWT-08-501, 2011 WL 4443441, at *1 (D. Md. Sept. 21, 2011)).

Local Rule 105.10 is also pertinent. With exceptions not applicable here,[3] Local Rule 105.10 provides that "any motion to reconsider any order issued by the Court shall be filed with the Clerk not later than fourteen (14) days after entry of the order." *See, e.g.*, *Direct Benefits, LLC v. TAC Fin., Inc.*, RDB-13-1185, 2019 WL 3804513, at *4 (D. Md. Aug. 13, 2019); *Humane Soc. of U.S. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, DKC-13-1822, 2017 WL 1426007, *5 (D. Md. Apr. 21, 2017).

### III. Discussion

Both Safeguard and PNC argue that the Motion is untimely because it was not filed within the 14-day time frame contemplated by Local Rule 105.10. ECF 106 at 5; ECF 113 at 1. They are technically correct. My initial decision was dated November 12, 2021. The fourteenth day

---

[3] Local Rule 105.10 begins: "Except as otherwise provided in Fed. R. Civ. P. 50, 52, 59, or 60 . . . ." As discussed, the Motion is a request for reconsideration of an interlocutory order, governed by Rule 54(b). Therefore, the exceptions to the fourteen-day requirement of Local Rule 105.10 do not apply here.

thereafter fell on November 26, 2021. Yet, the Motion was not filed until December 3, 2021. However, although the Court's decision was dated November 12, 2021, it was not actually docketed until November 15, 2021. *See* Docket. Furthermore, because plaintiffs are notified by mail, any deadline is automatically extended by three days, pursuant to Fed. R. Civ. P. 6(d). Therefore, plaintiffs' Motion was untimely, at most, by a few days.

In any event, the Motion fails on the merits. There is no suggestion that plaintiffs' Motion involves a change in the law or new evidence uncovered in the intervening period. Thus, the only basis for reconsideration would be "'clear error [by the court] causing manifest injustice.'" *Tobacco Coop.*, 899 F.3d at 256 (quoting *Carlson*, 856 F.3d at 325). Indeed, plaintiffs admit as much in their reply. *See* ECF 123 at 3. And, as noted, the standard for this ground is extremely high: the prior decision must be "'wrong with the force of a five-week-old, unrefrigerated dead fish. It must be dead wrong.'" *U.S. Tobacco Coop.*, 899 F.3d at 258 (quoting *TFWS, Inc.*, 572 F.3d at 194).

Plaintiffs have not identified any error, much less one that meets this standard. As discussed, the Court previously denied the Motion to Amend because the introduction of the proposed claims would have significantly changed the character of the litigation, and would require plaintiffs to prove, and defendants to attempt to rebut, entirely new elements. This, in turn, would have raised the strong possibility of having to reopen discovery as to the new claims, so that the parties could gather additional facts not contemplated as relevant during the original discovery period. And, because defendants contend that plaintiffs' proposed claims would be futile, granting the Motion to Amend would have likely led to new motions to dismiss. All of this would have substantially delayed the resolution of this case, just at a point in time when it was entering the summary judgment phase. Moreover, it was unclear why plaintiffs waited so long to attempt to

amend their Complaint, especially as the proposed Amended Complaint anchored the proposed new claims in the same facts alleged in the original Complaint.

The Motion, and the parties' subsequent briefing on the Motion, largely relitigates the same arguments on these issues that were debated by the parties in the briefing regarding the Motion to Amend. The Court carefully considered these arguments in its original ruling.[4] And, as noted, "[a] motion for reconsideration is 'not the proper place to relitigate a case after the court has ruled against a party, as mere disagreement with a court's rulings will not support granting such a request.'" *Lynn*, 953 F. Supp. 2d at 620 (quoting *Sanders*, 2011 WL 4443441, at *1.

In particular, much of the Motion and the briefing rehashes the parties' various disputes as to discovery, which plaintiffs contend was inadequate and belated. ECF 104 at 2-4; ECF 106 at 5-8; ECF 113 at 2; ECF 123 at 1-3. These disputes are relevant here insofar as they relate to plaintiffs' justification for offering their Motion to Amend so late in the process. Plaintiffs argue that defendants' alleged discovery misconduct supported their late filing. ECF 104 at 2-4. But, there has been no suggestion that the additional discovery ordered by Judge Gesner, which was modest, forms the basis for plaintiffs' proposed amendment. Indeed, the Motion to Amend was filed before Judge Gesner's ruling. And, neither the Motion nor plaintiffs' reply points to the relevance of the additional discovery produced as a result of Judge Gesner's ruling.

Plaintiffs assert in the Motion that PNC's discovery documents "confirm[] that it had to comply with the foreclosure law and that the Fair Debt Collection Practices Act does apply to it." ECF 104 at 5. In particular, they appear to identify a single discovery document, a letter sent by a law firm acting as debt collector to Mr. Norris regarding the property at issue on December 7, 2017

---

[4] Plaintiffs repeatedly express concern that the Court did not consider their replies (ECF 79; ECF 81) regarding the Motion to Amend. They are incorrect.

(and thus presumably within plaintiffs' possession), that cites the Fair Debt Collection Practices Act. *See* ECF 105-1. But, this does not change the fact that their proposed Amended Complaint (ECF 68-3) is premised on the same facts alleged in their original Complaint, and thus these claims could have been brought as part of the original Complaint. Because the facts underpinning the claims were known to plaintiffs at the outset of the litigation, there is no justification for their delay. *See, e.g.*, ECF 68-14, ¶¶ 53, 56, 60, 64-67, 70, 85 (anchoring the new claims in the same events). Therefore, this circumstance does not provide a basis for reconsideration.

The Court also considers plaintiffs' request in the Motion to amend the Complaint to add only the claim under R.P. § 7-113. Plaintiffs proposed their alternative Amended Complaint more than two months after the close of discovery.

This request is distinct from the one made in the Motion to Amend, for which plaintiffs seek reconsideration, and thus is properly considered as a new effort to amend the suit. But, the same logic discussed above, and in the Court's prior decision, would apply here, as plaintiffs seek to change the character of the litigation, involving a new claim with new elements, more than a year after the Complaint was initially filed. Again, there is a strong possibility that additional discovery would be required or that the Court would have to adjudicate new motions to dismiss, causing further delays and thus prejudice to defendants.

Although the Motion, with the new proposed Amended Complaint, was submitted before the filing of defendants' new summary judgment motions, it was offered well after defendants' original summary judgment motions were filed. And, it was the Court that required defendants to refile their summary judgment motions.[5]

---

[5] District judges are sometimes skeptical of motions to amend offered after the filing of summary judgment motions, in part because of the possibility that a plaintiff may be attempting to refashion its case to stave off an adverse summary judgment ruling. *See Hatch v. Dep't for*

Again, discovery in this case concluded at the end of September 2021, save for the modest additional production ordered by Judge Gesner. As a result of the various extensions solicited by plaintiffs, summary judgment briefing will not conclude until mid February. The Court is unwilling to countenance the additional delays to the efficient resolution of this case that an Amended Complaint would create, when amendment is not otherwise justified.

### IV. Sealing

As noted, plaintiffs submitted a number of documents in support of the Motion that they seek to seal. *See* ECF 105 (proposed sealed documents); ECF 104-2 (a one-sentence request to seal the exhibits in ECF 105). The request is premised on the Confidentiality Order (ECF 38), which provides that any materials that have been designated as confidential by a party should be filed under seal. *Id*. ¶ 2. However, plaintiffs have not explained why the materials should be sealed, as required by the Confidentiality Order (*id*.), Local Rule 104.13, and Local Rule 105.11.

Defendants have not objected to the proposed sealing. However, this does not relieve the Court of its obligation to conduct a review under Local Rule 105.11. *See Butler v. DirectSAT USA, LLC*, 876 F. Supp. 2d 560, 576 (D. Md. 2012).

In ruling on a motion to seal, the court must: (1) give the public notice that the sealing of documents may be ordered; (2) provide interested parties the opportunity to object to the motion; (3) state reasons on the record if the court decides to seal the case; and (4) state reasons for rejecting alternatives. *Rushford v. New Yorker Magazine, Inc*., 846 F.2d 249, 253-54 (4th Cir. 1988). When motions have been docketed and available to the public for multiple weeks, as here, the first two

---

*Children, Youth, and Their Families*, 274 F.3d 12, 19 (1st Cir. 2001); *Parish v. Frazier*, 195 F.3d 761, 764 (5th Cir. 1999); *Cowen v. Bank United of Texas, FSB*, 70 F.3d 937, 944 (7th Cir. 1995) (Posner, C.J.).

requirements have been met. *Padco Advisors, Inc. v. Omdahl*, 179 F. Supp. 2d 600, 614 (D. Md. 2002).

Confidential information may be subject to protection from public disclosure. Nevertheless, the common law presumes that the public and the press have a qualified right to inspect all judicial records and documents. *Doe v. Pub. Citizen*, 749 F.3d 246, 265 (4th Cir. 2014) (citations omitted); *Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567, 575 (4th Cir. 2004), *cert. denied*, 544 U.S. 949 (2005); *see also Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580 n.17 (1980) ("[H]istorically both civil and criminal trials have been presumptively open."). The common law right of access can be abrogated in "unusual circumstances," where "countervailing interests heavily outweigh the public interests in access." *Rushford*, 846 F.2d at 253; *accord Minter v. Wells Fargo Bank, N.A.*, 258 F.R.D. 118, 121 (D. Md. 2009).

The common law right of access is buttressed by a "more rigorous" right of access provided by the First Amendment, which applies to a more narrow class of documents, but is more demanding of public disclosure. *Rushford*, 846 F.2d at 253. If a court record is subject to the First Amendment right of public access, the record may be sealed "only on the basis of a compelling governmental interest, and only if the denial is narrowly tailored to serve that interest." *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178, 180 (4th Cir. 1988) (citing *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 510 (1984)). "When presented with a sealing request, our right-of-access jurisprudence requires that a district court first 'determine the source of the right of access with respect to each document, because only then can it accurately weigh the competing interests at stake.'" *Doe*, 749 F.3d at 266 (4th Cir. 2014) (quoting *Stone*, 855 F.2d at 181).

The Fourth Circuit has held that the First Amendment right of access applies to, for example, newly filed civil complaints and papers filed in connection with summary judgment. *See*

*Courthouse News Service v. Schaefer*, 2 F.4th 318, 325-28 (4th Cir. 2021); *Rushford*, 846 F.2d at 252-53. But, the Court is not aware of any authority suggesting that the First Amendment is implicated by briefing related to a motion to reconsider a non-dispositive decision denying a request to amend a complaint. *See Va. Dep't of State Police*, 386 F.3d at 580 (noting that the Fourth Circuit has "never held that the public has a First Amendment right of access to a pretrial hearing on a non-dispositive civil motion or to the transcript of such a hearing"); *ATI Indus. Automation v. Applied Robotics, Inc.*, No. 1:09CV471, 2014 WL 2607364, at *4 (M.D.N.C. June 11, 2014) (noting lack of Fourth Circuit authority on this issue).

In any event, plaintiffs did not submit any explanation as to why they are requesting the sealing of these documents. But, it appears that most of these documents have been designated as confidential, presumably by Safeguard or PNC, pursuant to the Confidentiality Order. *See* ECF 105-1; ECF 105-2 at 2, 4-7; ECF 105-3; ECF 105-4. And, most documents appear to contain proprietary or similar sensitive information as to the business practices of defendants, or personal and financial information as to plaintiffs. This information may properly be sealed. *See, e.g.*, *Pittston Co. v. United States*, 368 F.3d 385, 406 (4th Cir. 2004) (affirming sealing of "confidential, proprietary, commercial, or financial data" disclosed pursuant to a protective order); *Rock*, 819 F. Supp. 2d at 475 (noting that "sensitive medical or personal identification information may be sealed").

However, one document is a copy of a notice of foreclosure sale for the property at issue in this case, as published in the newspaper, together with a certification of publication. ECF 105-2 at 3. This document does not appear to have been marked confidential, at least judging by the lack of any "confidential" notation on the document. *See id.* And, it is difficult to understand why a public newspaper advertisement should be sealed.

In addition, another document, Exhibit F, consists of a portion of the deposition transcript of Amanda Norris. *See* ECF 105-5. This transcript references a letter from a PNC attorney to plaintiffs, which plaintiffs apparently had marked as confidential because it referenced plaintiffs' Baltimore Gas & Electric bills. *Id*. at 2-3. However, the transcript does not contain the letter and describes the letter only in generic terms, save for a single direct quote that does not reference any confidential information. *See id*. In the absence of any additional explanation, it is not clear why sealing is appropriate for this transcript portion.

Therefore, if any party seeks to seal ECF 105-2 at 3 and ECF 105-5, the party must submit to the Court a more detailed justification for sealing, due within 14 days of the docketing of the accompanying Order. If no submissions are received within this time frame, the Court shall assume no party seeks to seal ECF 105-2 at 3 and ECF 105-5.

## V. Conclusion

For the foregoing reasons, I shall deny the Motion. In addition, the parties shall have 14 days to justify the sealing of ECF 105-2 at 3 and ECF 105-5, as described above.

An Order follows.

Date: January 19, 2022                    /s/
                                          Ellen L. Hollander
                                          United States District Judge