IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

AMANDA NORRIS, *et al.*,
   *Plaintiffs*,

v.                                  Civil Action No.  ELH-20-3315

PNC BANK, N.A., *et al.*,
   *Defendants*.

**MEMORANDUM**

    The self-represented plaintiffs, Amanda Norris and Joseph Norris III, filed suit against defendants PNC Bank, N.A. ("PNC") and Safeguard Properties Management, LLC ("Safeguard"), alleging breach of contract, trespass, and invasion of privacy/intrusion upon seclusion. ECF 2 (the "Complaint"). [1] Plaintiffs requested compensatory and punitive damages. *Id.*  The suit is rooted in plaintiffs' default on their home mortgage loan, and defendants subsequent entries into the home, allegedly under the pretext of protecting the property.

    In a Scheduling Order (ECF 53), the Court set a summary judgment deadline for October 18, 2021. *See* ECF 53. Safeguard (ECF 63) and PNC (ECF 76) both timely moved for summary judgment.  However, on November 1, 2021, Magistrate Judge Beth Gesner, to whom I had referred discovery disputes, required defendants to supplement or provide certain discovery by November 15, 2021.  ECF 84 at 4, 6.  Accordingly, I denied defendants' summary judgment motions as premature and set December 15, 2021, as the new deadline for summary judgment motions.  *See* ECF 94; ECF 95.

---

[1] In a Memorandum Opinion of June 16, 2017 (ECF 156), the Court set forth a detailed factual summary.  To the extent relevant, I incorporate that factual summary here.

Safeguard and PNC subsequently filed new summary judgment motions, and each one was virtually identical to the original motion. *See* ECF 109 (Safeguard); ECF 110 (PNC). However, the defendants did not raise identical contentions in their respective summary judgment motions.

In particular, Safeguard urged the Court to strike plaintiffs' request for punitive damages (ECF 109-1 at 14-17), but PNC did not make a similar request in its motion. *See* ECF 156 at 76. Conversely, PNC contended that it could not be held vicariously liable for any alleged improper actions of Safeguard's contractor, Alpha Business Services, LLC ("Alpha"), a Maryland company providing property preservation services, which is owned by Edwin Twesigye. ECF 110-1 at 12-14. But, Safeguard never raised the issue of vicarious liability in its summary judgment motion. Yet, each defendant was on notice of the argument of the codefendant, based on earlier versions of the summary judgment motions.

By Memorandum Opinion (ECF 156) and Order (ECF 157) of June 17, 2022, the Court granted the summary judgment motions in part and denied them in part.[2] Specifically, with respect to Safeguard's motion, I granted summary judgment as to plaintiffs' breach of contract claim and as to plaintiffs' request for punitive damages, based on the absence of any evidence of actual malice. ECF 157, ¶ 1. In regard to PNC's motion, summary judgment was granted as to any claim of vicarious liability for the alleged intentional theft, damage, and destruction of plaintiffs' personal property allegedly committed by Twesigye. *Id.* ¶ 2. PNC was also granted summary judgment as to any claim for damages for emotional distress and punitive damages as to plaintiffs' breach of contract claim. *Id.* However, the Court did not grant summary judgment to PNC as to punitive damages for the trespass or invasion of privacy claims because PNC did not raise the issue in its motion. ECF 156 at 77 n. 35.

---

[2] I incorporate here the Factual Background set forth in ECF 156 at 9-35.

Three motions are now pending.  PNC moves for an order in limine to exclude evidence pertaining to punitive damages and to dismiss plaintiffs' demand for punitive damages against PNC (ECF 163), supported by a memorandum of law (ECF 163-1) (collectively, the "Motion in Limine").  Safeguard requests leave to file a second motion for partial summary judgment regarding vicarious liability (ECF 164), supported by a memorandum of law (ECF 164-1) (collectively, the "Motion for Leave").  And, plaintiffs seek reconsideration of certain decisions by the Court in its summary judgment ruling.  ECF 166 (the "Motion to Reconsider").

No hearing is necessary to resolve these motions.  *See* Local Rule 105.6.  For the reasons that follow, I shall deny the motions.

## I. PNC's Motion in Limine

PNC has filed a motion in limine, seeking to exclude evidence pertaining to any claim for punitive damages lodged against PNC and to dismiss plaintiffs' demand for punitive damages. ECF 163 at 1.

"A motion in limine is a request for guidance by the court regarding an evidentiary question." *United States v. Luce*, 713 F.2d 1236, 1239 (6th Cir. 1983), *aff'd*, 469 U.S. 38 (1984). The purpose of a motion in limine is "'to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial.'" *United States v. Slagle*, No. SAG-15-392, 2015 WL 5897740, at *1 (D. Md. Oct. 6, 2015) (quoting *Banque Hypothecaire Du Canton De Geneve v. Union Mines, Inc.*, 652 F. Supp. 1400, 1401 (D. Md. 1987)).  Stated differently, "motions in limine are meant 'to streamline the case for trial and to provide guidance to counsel regarding evidentiary issues.'" *Osei v. Univ. of Maryland Univ. Coll.*, 202 F. Supp. 3d

3

471, 479 n.5 (D. Md. 2016) (Chasanow, J.) (quoting *Adams v. NVR Homes, Inc.*, 141 F. Supp. 2d 554, 558 (D. Md. 2001)).

Motions in limine help to streamline a case, because such motions "enable[ ] a court to rule in advance on the admissibility of documentary or testimonial evidence and thus expedite and render efficient a subsequent trial.'" *INSLAW, Inc. v. United States*, 35 Fed. Cl. 295, 303 (1996) (citation omitted); *see Changzhou Kaidi Elec. Co., Ltd. v. Okin America, Inc.*, 102 F. Supp. 3d 740, 745 (D. Md. 2015) (motions in limine "are 'designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions.'" (internal quotation omitted)).

Generally, such rulings are preliminary, made in the discretion of the court, to assist counsel in preparation for trial. *Luce*, 713 F.2d at 1239-40; *see Adams v. NVR Homes, Inc.*, 141 F. Supp. 2d 554, 558 (D. Md. 2001) ("A ruling on a motion *in limine* is no more than a preliminary or advisory opinion that falls entirely within the discretion of the district court). When the evidence is actually offered at trial, the trial court may change its ruling. *Luce*, 713 F.2d at 1239. And of relevance here, a judge may also defer the issue for trial, or make a definitive or final ruling on the merits. K. Broun, *et al.*, *McCormick on Evidence*, § 52 at 353-54 (7th ed. 2013). If the Court makes a "definitive ruling" before trial, under Federal Rule of Evidence 103(b), the non-prevailing party "need not renew an objection or offer of proof to preserve a claim of error for appeal." *See* 21 C. Wright and K. Graham, *Federal Practice and Procedure*, § 5037.16, at 800 (2d ed. 2005).

Moreover, "'[a] district court is accorded a wide discretion in determining the admissibility of evidence under the Federal Rules.'" *Sprint/United Management Co. v. Mendelsohn*, 552 U.S. 379, 384 (2008) (quoting *United States v. Abel*, 469 U.S. 45, 54 (1984)). Under Rule 402 of the Federal Rules of Evidence, "[r]elevant evidence is admissible" unless rendered inadmissible pursuant to some other legal provision, but "[i]rrelevant evidence is not admissible." Notably,

4

"[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Of course, under Rule 403, even if the evidence is relevant, the court "may exclude [it] if its probative value is substantially outweighed by a danger of . . . unfair prejudice," or would confuse the issues, mislead the jury, cause undue delay, waste time, or "needlessly" involve "presenting cumulative evidence."

A motion in limine must be considered in light of the contentions asserted by the parties. PNC seeks to preclude plaintiffs from entering evidence pertaining to punitive damages, claiming such evidence is "not relevant to any fact of consequence remaining at trial." ECF 163-1 at 4. Conversely, plaintiffs urge the Court to deny the Motion in Limine because PNC did not raise the issue in its renewed motion for summary judgment. ECF 168 at 3. Plaintiffs also argue that PNC does not identify with specificity the evidence it wants the Court to exclude. *Id.* at 4. Accordingly, plaintiffs maintain that adjudication of the admissibility of evidence should be deferred for trial, as the exact testimony at trial is not known. *Id.* at 3.

The fact that PNC did not raise the issue of punitive damages in its motion for summary judgment is surprising but not dispositive. However, I agree that the Motion in Limine lacks the necessary specificity with respect to the evidence sought to be excluded. At this point, there is already a significant record and the contours of the case and the facts are well known to both parties. But, it is unclear what evidence, if any, PNC seeks to exclude.

Motions in limine pertain to evidence, not to claims. Although this Court has determined that the current record does not support a claim of actual malice as to the codefendant, PNC's motion is too broad to be decided in limine.

Moreover, the Court has already devoted considerable time to the issues that were timely raised. Other cases now require my attention. I decline to revisit the evidence as to this issue merely because PNC did not timely raise the matter.[3]

Accordingly, I will reserve ruling, until trial, the question of the admissibility of particular evidence. Therefore, I shall deny the Motion in Limine, without prejudice to PNC's right at trial to challenge the admission of evidence and/or to challenge the submission to the jury of the claim for punitive damages.

## II. Safeguard's Motion for Leave

As mentioned, plaintiffs allege claims for breach of contract, trespass, and invasion of privacy/intrusion upon seclusion against Safeguard. ECF 2. Notably, Safeguard retained Alpha to perform property preservation services. ECF 164-1 at 2; *see also* ECF 156 at 13. Safeguard now seeks leave to file a second motion for summary judgment to address and resolve the issue of vicarious liability. ECF 164.

A scheduling order, such as the Scheduling Order in this case, is not a "'frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril.'" *Potomac Electric Power Co. v. Electric Motor Supply, Inc.*, 190 F.R.D. 372, 375-76 (D. Md. 1999) (quoting *Gestetner Corp. v. Case Equipment Co.*, 108 F.R.D. 138, 141 (D. Me. 1985)). To the contrary, scheduling orders serve a vital purpose in helping a court manage its civil caseload. *Gestetner Corp.*, 108 F.R.D. at 141; *see also Naughton v. Bankier*, 14 Md. App. 641, 653, 691 A.2d 712, 718 (1997) (recognizing that a scheduling order helps "to maximize judicial efficiency and minimize judicial inefficiency"). "In an era of burgeoning case loads and [crowded] dockets, effective case

---

[3] I also incorporate here the discussion concerning the import of a scheduling order, as set forth, *infra*, with regard to Safeguard's Motion for Leave.

management has become an essential tool for handling civil litigation." *Tower Ventures, Inc. v. City of Westfield*, 296 F.3d 43, 45 (1st Cir. 2002) (alteration added). To that end, a scheduling order is an important vehicle in "'securing the just, speedy, and inexpensive determination of every action.'" *Miller v. Transcend Services, Inc.*, 10 CV 362, 2013 WL 1632335, at *4 (M.D.N.C. Apr. 16, 2013) (citation omitted).

Modification of a scheduling order requires good cause. Fed. R. Civ. P. 16(b)(4). The "'touchstone'" of Rule 16(b)(4)'s "good cause requirement is 'diligence.'" *Faulconer v. Centra Health*, 808 Fed. App'x 148, 152 (4th Cir. 2020) (citation omitted). Indeed, "only diligent efforts to comply with the scheduling order can satisfy Rule 16's good cause standard." *Id*. at 152. The Fourth Circuit has endorsed this proposition several times, in line with other circuits. *Id*. at 152 n.1 (collecting cases). Accord *Rassoull v. Maximus, Inc.*, 209 F.R.D. 372, 374 (D. Md. 2002) ("Lack of diligence and carelessness are 'hallmarks of failure to meet the good cause standard.'") (citation omitted).

In determining whether the moving party has met its burden to show good cause, courts may also consider "whether the moving party acted in good faith, the length of the delay and its effects, and whether the delay will prejudice the non-moving party." *Elat v. Ngoubene*, 993 F. Supp. 2d 497, 520 (D. Md. 2014). However, "'[i]f the movant has not been diligent in meeting the scheduling order's deadlines,' then other factors . . . generally will not be considered.'" *Faulconer,* 808 F. App'x at 152 (quoting *Kmak v. Am. Century Cos., Inc.*, 873 F.3d 1030, 1034 (8th Cir. 2017)). Some district court judges have expressed this proposition even more forcefully. *See, e.g.*, *Rassoull*, 209 F.R.D. at 374 ("'If [the moving party] was not diligent, the inquiry should end.'") (citation omitted); *Marcum v. Zimmer*, 163 F.R.D. 250, 254 (S.D.W. Va. 1995) ("'[T]he

7

focus of the inquiry is upon the moving party's reasons for seeking modification. *If that party is not diligent, the inquiries should end*.'" (citation omitted) (emphasis in *Marcum*).

Of particular relevance here, courts have inherent power to manage their own dockets. In *Link v. Wabash R. Co.*, 370 U.S. 626, 632 (1962), the Supreme Court stated that a court's "inherent power" to dismiss a case for lack of prosecution is "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs to as to achieve the orderly and expeditious disposition of cases." *See also Woodson v. Surgitek*, 57 F.3d 1406, 1417 (5th Cir. 1995) (observing that courts' inherent power permits "dismissing a case as a sanction for a party's failure to obey court orders").

Safeguard's request to file another summary judgment motion comes after Safeguard failed to raise the issue in its original summary judgment motion and in its renewed motion for summary judgment. Safeguard justifies its Motion for Leave by arguing that plaintiffs never alleged, in the Complaint, that Safeguard was vicariously liable for the acts or omissions of its contractor, Alpha, or Alpha's owner, Twesigye. ECF 164-1, ¶ 7. But, by the time of Safeguard's renewed summary judgment motion, Safeguard would have known that PNC had raised the issue in its original summary judgment motion. ECF 109. Yet, Safeguard did not bother at that time to rectify its omission.

Plaintiffs assert that because the Complaint explicitly stated that "the unlawful acts were committed by 'Defendants,'" Safeguard was aware of plaintiffs' position. ECF 169 at 3. Additionally, plaintiffs assert that Safeguard should have known that plaintiffs were seeking to hold Safeguard vicariously liable because codefendant PNC raised the issue in its motion for summary judgment. *Id.* at 1.

I am persuaded by plaintiffs' arguments. Safeguard had access to PNC's initial motion for summary judgment, filed on October 15, 2021, which addressed the issue of vicarious liability. ECF 76 at 2, 12. One month later, I denied defendants' initial summary judgement motions as premature, and set December 15, 2021, as the new deadline for summary judgment motions. *See* ECF 94; ECF 95. Thus, as plaintiffs note, Safeguard had ample time to review PNC's initial motion for summary judgement and assert the issue of vicarious liability in its renewed motion for summary judgment. ECF 169 at 2. Yet, in all this time, Safeguard did not include any additional claims.

I already addressed the defense motions. It would have been far more efficient for the Court to address all summary judgment issues at the same time, to avoid unnecessary duplication of effort and the waste of valuable time. As I see it, Safeguard has not demonstrated adequate diligence to justify granting Safeguard a second bite at the summary judgment apple. Accordingly, the Motion for Leave is denied, without prejudice. This is an issue that can be addressed at trial.

### III. Plaintiffs' Motion to Reconsider

My earlier summary judgment ruling (ECF 155; ECF 156) was an interlocutory order, because it adjudicated "fewer than all the claims or the rights and liabilities of fewer than all the parties." Fed. R. Civ. P. 54(b). A motion for reconsideration of an interlocutory order is governed by Fed. R. Civ. P. 54(b), under which "any order . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12 (1983); *Nadendla v. WakeMed*, 24 F.4th 299, 304 (4th Cir. 2022); *Carlson v. Boston Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017). Under the rule, "a district court retains the power to reconsider and modify its interlocutory judgments. . . at any time prior to final judgment. . . ." *U.S. Tobacco Coop., Inc. v. Big South*

*Wholesale of Va., LLC*, 899 F.3d 236, 256 (4th Cir. 2018); *see Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514-15 (4th Cir. 2003).

Accordingly, resolution of a motion to reconsider an interlocutory order is "committed to the discretion of the district court," *Am. Canoe Ass'n*, 326 F.3d at 515, with "the goal . . . to reach the correct judgment under law." *Netscape Commc'n Corp. v. ValueClick, Inc.*, 704 F.Supp.2d 544, 547 (E.D.Va. 2010) (internal citations omitted). However, the Fourth Circuit has said that a court should only revise an interlocutory order in limited circumstances, in order to promote efficiency, judicial economy, and finality. *See, e.g.*, *Am. Canoe Ass'n*, 326 F.3d at 515; *Sejman v. Warner-Lambert Co, Inc.*, 845 F.2d 66, 68-69 (1988); *see also Christianson v. Colt Indus. Oper. Corp.*, 486 U.S. 800, 816 (1988). Indeed, "allowing litigants a 'second bite at the apple' via a motion to reconsider is disfavored." *Nadendla*, 24 F.4th at 305.

Additionally, the Fourth Circuit has admonished that "the discretion afforded by Rule 54(b) 'is not limitless,'" and the Court has "'cabined revision pursuant to Rule 54(b) by treating interlocutory rulings as law of the case.'" *Tobacco Coop.*, 899 F.3d at 256 (quoting *Carlson*, 856 F.3d at 325). The law of the case doctrine "generally provides that 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *Musacchio v. United States*, 557 U.S. 237, 244-45 (2016) (quoting *Pepper v. United States*, 562 U.S. 476, 506 (2011)); accord *Arizona v. California*, 460 U.S. 605, 618 (1983); *Graves v. Lioi*, 930 F.3d 307, 318 (4th Cir. 2019); *Carlson*, 856 F.3d at 325; *TFWS, Inc. v. Franchot*, 572 F.3d 186, 191 (4th Cir. 2009). The doctrine's effect is to bar a party from resurrecting issues that were previously decided or "'decided by necessary implication.'" *United States v. Lentz*, 524 F.3d 501, 528 (4th Cir. 2008) (quoting *Sejman*, 845 F.2d at 68). In so doing, the law of the case doctrine advances the interests of efficiency, judicial economy, and finality. *See Christianson*, 486 U.S. at

816 (1988) (observing that the doctrine safeguards the "efficiency of the judicial process by protecting against the agitation of settled issues"); *United States v. Philip Morris USA Inc.*, 801 F.3d 250, 257 (D.C. Cir. 2015) (noting that the law of the case "reflects the understanding that 'inconsistency is the antithesis of the rule of law'") (citation and alteration omitted).

When applied to a court's interlocutory rulings, the law of the case doctrine "is not an 'inexorable command' but rather a prudent judicial response to the public policy favoring an end to litigation." *Sejman*, 845 F.2d at 68 (citation omitted). Accordingly, the Fourth Circuit has instructed that a court should revise an interlocutory order only to account for "'(1) a subsequent trial producing substantially different evidence; (2) a change in applicable law; or (3) clear error causing manifest injustice.'" *Tobacco Coop.*, 899 F.3d at 256 (quoting *Carlson*, 856 F.3d at 325).

The first of these bases "account[s] for potentially different evidence discovered during litigation." *Tobacco Coop.*, 899 F.3d at 256 (quoting *Carlson*, 856 F.3d at 325). By its terms, however, this ground refers to evidence discovered *during* litigation, not simply to material that a party could have offered initially, but chose not to. *See Carlson*, 856 F.3d at 326 (affirming denial of motion for reconsideration of summary judgment when testimony cited by movant was available well before summary judgment briefing). "[A] party who fails to present his strongest case in the first instance generally has no right to raise new theories or arguments in a motion to reconsider." *United States v. Duke Energy Corp.*, 218 F.R.D. 468, 474 (E.D.N.C. 2003) (quoting *Fidelity State Bank, Garden City, Kan. v. Oles*, 130 B.R. 578, 581 (D. Kan. 1991)) (alteration mine).

The Fourth Circuit has also colorfully explained how difficult it is to meet the third basis for reconsideration. It has said: "As we have noted on more than one occasion, '[a] prior decision does not qualify for th[e] third exception by being just maybe or probably wrong; it must strike us as wrong with the force of a five-week-old, unrefrigerated dead fish. It must be dead wrong.'"

11

*Tobacco Coop.*, 899 F.3d at 258 (quoting *TFWS, Inc.*, 572 F.3d at 194) (alterations in *Tobacco Coop.*). In other words, "[a] motion for reconsideration is 'not the proper place to relitigate a case after the court has ruled against a party, as mere disagreement with a court's rulings will not support granting such a request.'" *Lynn v. Monarch Recovery*, 953 F. Supp. 2d 612, 620 (D. Md. 2013) (quoting *Sanders v. Prince George's Pub. Sch. Sys.*, RWT-08-501, 2011 WL 4443441, at *1 (D. Md. Sept. 21, 2011)).

Application of these principles plainly compels denial of plaintiffs' Motion to Reconsider (ECF 166). As mentioned, this Court granted summary judgement with respect to plaintiffs' claim for punitive damages against Safeguard. ECF 156; ECF 157. The Motion to Reconsider primarily asks the Court to reconsider this decision. ECF 166 at 1-11. However, the Motion to Reconsider falls far short of identifying new evidence obtained through the litigation; a change in applicable law; or clear error causing manifest injustice. Indeed, the Motion to Reconsider is little more than a rehashing of plaintiffs' earlier arguments, which have already been considered and rejected by the Court.

As I noted in my ruling, "an award of punitive damages generally must be based upon actual malice . . . ." ECF 156 at 76 (quoting *Montgomery Ward v. Wilson*, 339 Md. 701, 733, 664 A.2d 916, 932 (1995)). "Actual malice" means "conduct characterized by evil or wrongful motive, intent to injure, knowing and deliberate wrongdoing, ill will or fraud . . . ." *Montgomery Ward*, at 339 Md. at 729 n.5. "What is needed to support an award of punitive damages is conscious and deliberate wrongdoing." *Hoffman v. Stamper*, 385 Md. 1, 42, 867 A.2d 276, 301 (2005). Furthermore, actual malice must be established by clear and convincing evidence. *Darcars Motors of Silver Spring, Inc. v. Borzym,* 379 Md. 249, 264, 841 A.2d 828, 837 (2004).

Plaintiffs provide neither new facts nor a change in applicable law, nor have they shown that the Court's prior decision was made in error. In sum, as best I can interpret it, the Motion to Reconsider does not provide adequate grounds under Rule 54(b) to reconsider my prior ruling.

Plaintiffs also ask the Court to reconsider its ruling that Maryland Code, Real Property Article § 7-105.18 ("R.P.") does not govern the meaning of the word "vacant" as used in the Deed of Trust that encumbers plaintiff's property. ECF 166 at 12. However, this Court concluded that "the ordinary and unambiguous meaning of the word 'vacant,' in the context of the Deed, is that the Property is 'not lived in,' as in the Merriam-Webster definition." ECF 156 at 65. Additionally, the Court has already rejected plaintiffs' attempts to argue that the Deed of Trust required the property to be "abandoned," explaining that "the language of the Deed is clear that the Property need only be 'vacant or abandoned' to authorize preservation activities." *Id.*

Again, plaintiffs' Motion to Reconsider largely repeats the same arguments made in their opposition to summary judgment. ECF 134 at 28. But, none of the information contained therein alters the conclusion that "R.P. § 7-105.18 does not govern here." ECF 156 at 68.

Consequently, I shall deny the Motion to Reconsider.

### IV. Conclusion

For the foregoing reasons, I shall deny all pending motions, *i.e.*, PNC's Motion in Limine (ECF 163), Safeguard's Motion for Leave (ECF 164), and plaintiffs' Motion to Reconsider (ECF 166).

An Order follows, consistent with this Memorandum.

Date: October 4, 2022  /s/
Ellen L. Hollander
United States District Judge

13