IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

AMANDA NORRIS, *et al.*,

    *Plaintiffs*,

v.

PNC BANK, N.A., *et al.*,

    *Defendants*.

Civil Action No.  ELH-20-3315

**MEMORANDUM OPINION**

The self-represented plaintiffs, Amanda Norris and Joseph Norris III, are the owners of a house located in Baltimore County (the "Property").  They filed a verified Complaint against defendant PNC Bank, N.A. ("PNC"), which held the mortgage to the Property at the relevant time, and Safeguard Properties Management, LLC ("Safeguard"), a property preservation services company.  ECF 2 (the "Complaint"); ECF 1-2 (same).  They appended several exhibits to the suit.[1]

In particular, plaintiffs allege breach of contract (Count One), trespass (Count Two), and invasion of privacy/intrusion upon seclusion (Count Three).[2]  The claims arise from defendants' inspection of the Property following the default, and their efforts to secure it, based on the claim that the mortgage loan was in default and the Property was vacant.

The case is hotly contested, and the Court has issued several written decisions addressing various issues.  *See*, *e.g.*, ECF 94, ECF 111, ECF 126, ECF 156, ECF 185.  The opinions include an 81-page Memorandum Opinion (ECF 156) and Order (ECF 157) granting summary judgment

---

[1] Suit was originally filed in the Circuit Court for Baltimore City.  In November 2020, PNC, with the consent of Safeguard, removed the case to this Court on the basis of diversity jurisdiction, pursuant to 28 U.S.C. §§ 1332 and 1441.  *See* ECF 1 (Notice of Removal).

[2] I have since granted summary judgment to Safeguard with respect to the contract claim. *See* ECF 156.

to defendants in part and denying summary judgment in part.  Trial is scheduled to begin on June 7, 2023.  ECF 179; ECF 205, ECF 229.[3]

Motions in limine were due by March 3, 2023, and were set to be heard on May 19, 2023. *See* ECF 179; ECF 180.  Safeguard filed an omnibus motion in limine.  ECF 189 ("Safeguard's Motion").  Plaintiffs responded (ECF 206) and Safeguard replied.  ECF 217.  Additionally, plaintiffs filed a motion in limine seeking to exclude from trial certain photographs of the Property. ECF 192 ("Plaintiffs' Motion").  Defendants responded (ECF 195) and plaintiffs replied.  ECF 198.  And, plaintiffs filed a renewed motion for belated disclosure of experts.  ECF 199 (the "Renewed Motion").  Defendants oppose the Renewed Motion.  ECF 200.  Plaintiffs did not reply.

The Court held a hearing on May 19, 2023, which unexpectedly resumed on May 24, 2023. Argument was presented on the motions.[4]   For the reasons that follow, I shall grant Safeguard's Motion in part and deny it in part.  And, I shall deny Plaintiffs' Motion and their Renewed Motion.

### I. Factual Background[5]

Plaintiffs, who are married, are the owners of a house in the Windsor Mill area of Baltimore County.  ECF 1-2, ¶ 1.  According to Sarah Greggerson, a PNC Mortgage Officer, at the relevant

---

[3] Trial was set to begin on June 5, 2023.  However, the Court recently advised the parties of the need to begin jury selection on June 7, 2023.

[4] The Court does not have a transcript of any hearings held in this case.  Therefore, where appropriate, I have relied on my notes.

[5] The Memorandum Opinion of June 16, 2022 (ECF 156) contains a detailed factual summary.  To the extent relevant, I incorporate that factual summary here.  *See id.* at 9-35.

Throughout the Memorandum Opinion, the Court cites to the electronic pagination. However, the electronic pagination does not always correspond to the page number imprinted on the particular submission.

time PNC held and serviced plaintiffs' mortgage loan (the "Loan" or the "Mortgage") for the Property.  ECF 110-4 (Greggerson Decl.), ¶¶ 1, 3-5; *see also* ECF 1-2, ¶ 2.

Plaintiffs obtained the Mortgage on June 23, 2003, in the amount of $137,660.00, from National City Mortgage Co. d/b/a Accubanc Mortgage, a division of National City Bank ("National").  ECF 1-2 at 13.  The Loan was evidenced by a promissory note, payable to National. *Id.*; *see* ECF 1-2 at 25-26 (the "Note"); *see also* ECF 110-4, ¶¶ 3-5.  The Note is secured by a Deed of Trust, which is recorded.  ECF 110-4, ¶ 3; ECF 1-2 at 14; ECF 1-2 at 27-38 (the "Deed of Trust").

PNC is the successor by merger to National.  ECF 1-2 at 2, 14.   Therefore, PNC is the current beneficiary of the Deed of Trust.  *Id.* at 14.

On or about July 1, 2017, plaintiffs defaulted on the Mortgage.  *Id.* ¶ 4.  On September 18, 2017, PNC sent plaintiffs a Notice of Intent to Foreclose, and a foreclosure action was filed in the Circuit Court for Baltimore County on January 11, 2018.  *See* ECF 1-2 at 12; 47-50.

Of pertinence here, the Deed of Trust includes the following provision, which states, in part, as follows, ECF 1-2 at 30 (boldface in original):

> **5.  Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds** . . . .  Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted.  Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default.  Lender may take reasonable action to protect and preserve such vacant or abandoned Property. . . .

In connection with the default, PNC retained Safeguard, a property preservation services company, to implement measures to inspect and protect the Property.  ECF 1-2, ¶¶ 6-7, 40.  PNC describes Safeguard as an "independent contractor."  ECF 110-1 at 4.  Safeguard describes itself as "an agent of PNC and a third-party beneficiary of the Deed of Trust."  ECF 109-1 at 3.

At the time, Safeguard had a "Master Services Agreement" ("MSA") with PNC, governing the services it provided for PNC. *See* ECF 136-2 at 15-45. A provision of the MSA stated: "[Safeguard] understands it shall serve as an independent contractor, and under no circumstances shall it be, or be deemed to be, a partner, agent, servant, distributor, or employee of [PNC] in its performance hereunder." *Id*. at 22. Of relevance here, the MSA provides for visual exterior inspection and, in some cases, interior inspection and protection of properties. *Id*. at 43; *see also id.* at 5.

In an earlier submission, PNC asserted, and plaintiffs did not contest, that the Mortgage is insured by the Federal Housing Administration ("FHA"), and therefore subject to FHA requirements. ECF 110- 1 at 2, 4 n.1. PNC directed the Court's attention to FHA Mortgagee Letter 2016-02, which "consolidates and updates property preservation and protection (P&P) guidance for properties securing FHA-insured mortgages." FEDERAL HOUSING ADMIN. MORTGAGEE LETTER 2016-02 at 1 (Feb. 5, 2016), https://www.hud.gov/sites/documents/16-02ML.PDF. Mortgagee Letter 2016- 02 provides: "The mortgagee [*i.e.*, PNC] must preserve and protect all vacant properties securing FHA-insured mortgages in default or in foreclosure." *Id*. at 2. And, it enumerates various requirements for doing so. *See id*. at 1-19.

Plaintiffs allege that agents of defendants unlawfully entered their home several times between October and December 2017, under the pretext that it was vacant and supposedly to protect the Property. ECF 1-2, ¶ 7. At the hearing on May 24, 2023, they asserted that defendants unlawfully took possession of the home by changing the locks and barring their entry. In the course of defendants' entry into the home, defendants allegedly stole, damaged, and destroyed personal property of plaintiffs, and also damaged the house itself. *Id*. The parties dispute the

extent to which either plaintiff actually resided at the Property in the fall and winter of 2017, when the entries occurred.

Safeguard propounded interrogatories to Ms. Norris and to Mr. Norris.  ECF 109-8 (Ms. Norris's Resps. to Safeguard's First Interrogs., the "Answers"); ECF 189-2 (Mr. Norris's Resps. to Safeguard's First Interrogs.).  Ms. Norris was asked to identify all facts and documents supporting plaintiffs' contention that the Property was not vacant at the relevant time.  ECF 109-8 at 6.  She responded: "[T]o the best of my recollection, knowledge and belief and without waving objections, please see Maryland Property Code 7-105, 7-105.1, 7-105.18." *Id.*

Mr. Norris was asked to provide "the name, address and phone number of every person, other than a person intended to be called as an expert witness at trial, having personal knowledge of the facts material to the cause or circumstances concerning the incident referred to in [the] Complaint . . ." ECF 189-2 at 1.  Mr. Norris only identified Ms. Norris.  *Id.* at 2.

Plaintiffs also provided a list of personal property that they assert was stolen or destroyed by defendants, along with dollar values.  ECF 109-8 at 7-8; *see also* ECF 189-2 at 2-3.  These include several "signed" first edition books; a piggy bank belonging to their son, containing $600 in cash;[6] a car worth $3,500; a riding lawnmower; a washing machine; stemware and china; items of clothing; a statue by the sculptor Frederic Remington, allegedly worth $1,200; and other items. According to plaintiffs, at the time that the items were stolen, damaged, or destroyed, the total value was approximately $9,600.  ECF 109-8 at 7-8; *see also* ECF 189-2 at 2-3.

As to the piggy bank, Ms. Norris testified that $400 of the cash in the piggy bank consisted of $100 dollar bills given to plaintiffs' son by his grandparents when he was born.  ECF 136-1 at

---

[6] In the Complaint, plaintiffs allege that "over $500 was stolen" from the piggy bank.  ECF 1-2, ¶ 7.  At Ms. Norris's deposition, she stated that there was "around five or six hundred dollars" in the piggy bank.  ECF 136-1 at 16 (Tr. at 108).

16 (Tr. at 108).  Furthermore, Ms. Norris claims that defendants wrote a phrase ("Basement 55 yrds") on a Valentine's Day card from their son.  ECF 109-8 at 9.  She also asserts that individuals "riffled through [her] intimate apparel."  *Id*.

The car in issue is a 1999 Toyota Avalon, about 18 years old at the relevant time.  Plaintiffs claim that it was worth either $3,000 or $3,500 when it was "destroyed" by defendants.  *See id*. at 7; *see also* ECF 189-2 at 3; ECF 136 at 10-11.[7]  The value was derived from the Kelly Blue Book. ECF 136 at 10-11; ECF 136-1 at 19 (Tr. at 119-20).  Ms. Norris testified that electronics were removed from the vehicle, the seats were damaged, and the glove compartment was accessed.  ECF 136-1 at 19-20 (Tr. at 119-22).  However, Ms. Norris testified that plaintiffs never took the car to be repaired, and she did not know how much that would cost.  *Id*. at 20 (Tr. at 121-22).  Notably, Mr. Norris testified that the car was inoperable at the time of the entries, and remained inoperable as of his deposition in May 2021.  ECF 109-3 at 1-2 (Tr. at 26-28).

In addition, plaintiffs asserted in their answers to interrogatories that the Property depreciated in value in the amount of $234,000.  ECF 109-8 at 8; ECF 189-2 at 4.  But, they did not provide the overall value of the Property.  And, they listed further damage to the Property, including damage to the water heater; front door; plumbing; bathroom floors; toilets; mold; and the loss of several trees, for which they are entitled to replacement.  ECF 109-8 at 8; ECF 189-2 at 4.  These items totaled approximately $7,000, although not all are accompanied by dollar amounts.  ECF 109-8 at 8; ECF 189-2 at 4.  They also claimed $1,560 in damages from biweekly laundromat visits for three years, because their washing machine was rendered unusable.  ECF

---

[7] Plaintiffs' Interrogatory Answers include a $3,500 figure, but Ms. Norris testified to $3,000 at her deposition. ECF 109-8 at 7; ECF 136 at 10-11.

109-8 at 8; ECF 189-2 at 4.  Many of these damages are allegedly the result of the repeated winterizing of the Property by defendants.  *See, e.g.*, ECF 134 at 34, 39-40.

Ms. Norris articulated similar but somewhat more expansive claims at her deposition.  *See* ECF 136-1.[8]  She mentioned the card; the piggy bank; broken stemware and glasses; clothes pulled out of drawers; the use of clothes as rags; a "lopsided" riding lawnmower wheel; mold in the bathroom; a missing American flag, which belonged to the father of one of the plaintiffs in connection with his military service; and a damaged washing machine.  *See* ECF 136-1 at 15, 16, 20, 22-24, 28 (Tr. at 99, 106-07, 122-24, 130-31, 134- 37, 161-62).  As to the mold, plaintiffs claimed that defendants drained their toilets and that, because of the actions of defendants, their toilets did not work.  ECF 134 at 39.  According to plaintiffs, this led to water damage on the floors, which created mold.  *Id.*[9]  Ms. Norris also testified that certain trees on the Property "fell apart" or were "uprooted" because of damage from defendants in the course of trimming tree branches.  ECF 136-1 at 22-23 (Tr. at 132- 34).

At their depositions, plaintiffs said that they found dollar values for missing or damaged items, as well as depreciation, from the Internet, and that they lacked receipts for many of the older items.  ECF 136-1 at 19-22 (Tr. at 117, 124-25, 129-30); *see also* Safeguard Motion Ex. 6 (Tr. at 34-35).  Plaintiffs submitted printouts from websites showing the price of various items that they assert were damaged or stolen by defendants, such as the hot water heater, the riding mower, and

---

[8] The Court has excerpts of plaintiffs' depositions included as exhibits in connection with the summary judgment motions.  At the hearing on the motions in limine, the Court asked Safeguard to provide the Court with full transcripts of plaintiffs' depositions.  Safeguard did so on May 25, 2023.  I will refer to them as Safeguard Motion Ex. 5 ("Ms. Norris Full Deposition Transcript"); Safeguard Motion Ex. 6 ("Mr. Norris Full Deposition Transcript).    They have not been docketed because of confidentiality concerns.

[9] At the hearing on May 19, 2023, Ms. Norris indicated that plaintiffs do not claim that the mold made them sick.

the washing machine.  ECF 136 at 6-9, 12-17.  For example, one document is a printout of a page on the Sears website, showing a price of $1,999.99 for a new Husqvarna "Hydrostatic Riding Mower."  *Id.* at 8.  But, these materials do not establish the age or condition of the allegedly damaged or stolen items, at the time of the entries, or that the replacement items are of the same brand, model, quality, or condition of the damaged items.

In addition, plaintiffs submitted hundreds of photographs of the exterior and interior of the Property, both those provided by Safeguard and some that they took themselves.  *See* ECF 137-1 to ECF 137-15; ECF 138.  This is the largest part of their documentation as to damages, as they claim these photographs establish damages to their Property and that defendants caused the damages.  *See, e.g.*, ECF 134 at 18, 42-43.

Plaintiffs also assert physical and emotional injuries caused by defendants' actions.  In their Answers, plaintiffs claim "emotional trauma"; "emotional distress"; "pain and suffering"; and "mental anguish."  ECF 109-8 at 5.  Specifically, Ms. Norris claims that since the entries, she cannot sleep, does not feel safe, her eating habits fluctuate, she hyperventilates, and she has developed headaches and rashes.  *Id.* at 9; ECF 136-1 at 24 (Tr. at 140).  And, Mr. Norris testified that he also suffered from poor sleep and a fluctuating appetite.  ECF 109-3 at 10 (Tr. at 35).

Ms. Norris testified that as of her May 2021 deposition, she had not sought medical treatment, except for her rash.  ECF 136-1 at 24-25 (Tr. at 144-45).  And, plaintiffs did not provide any medical documentation as to the rash, aside from a document generally listing the causes and treatments of atopic dermatitis.  *See* ECF 137-16 at 11-12.

Additional facts are included, *infra*.

## II. Procedural History

Safeguard answered the suit in November 2020 (ECF 5) and PNC answered the Complaint in December 2020.  ECF 13.  Thereafter, on December 9, 2020, I entered a Scheduling Order. ECF 14.  Among other things, I set a discovery deadline of May 6, 2021, and a dispositive motion deadline of June 7, 2021.  After a series of extensions (ECF 33; ECF 47; ECF 53), discovery concluded on September 24, 2021.  As a result, the parties had about ten months to conduct discovery.  And, the dispositive motions deadline was extended to October 18, 2021.[10]

In the interim, on June 8, 2021, I referred the case to Magistrate Judge Beth Gesner for discovery matters.  ECF 41.  And, there were a flurry of discovery filings.  *See* ECF 55, ECF 57, ECF 58, ECF 59, ECF 60.

Safeguard (ECF 63) and PNC (ECF 76) timely filed summary judgment motions. However, on November 1, 2021, Magistrate Judge Beth Gesner, to whom I had referred discovery disputes, required defendants to supplement or provide certain discovery by November 15, 2021. ECF 84 at 4, 6.  Specifically, Judge Gesner ordered Safeguard to supplement its responses to three of plaintiffs' interrogatories, so as to identify more specifically the documents and information noted in its responses; respond to one of plaintiffs' interrogatories, but for a reduced time period; produce a complete, unredacted version of an insurance policy, as requested by plaintiffs; and produce a privilege log.  *Id*. at 1-4.  And, also by November 15, 2021, Judge Gesner ordered PNC

---

[10] At the conclusion of discovery, plaintiffs sought to amend their suit to add additional claims.  ECF 68.  Some of the proposed claims were substantially different from those that were pending.  I denied plaintiffs' motion in November 2021.  *See* ECF 94; ECF 95 (Memorandum and Order of November 12, 2021); *see also* ECF 126; ECF 127 (Memorandum and Order of January 19, 2022, denying plaintiffs' motion for reconsideration).  In the Memorandum of November 12, 2021, I stated that there was "no clear reason why plaintiffs waited nearly a year from the date they originally filed their Complaint" before seeking to amend.  ECF 93 at 7.  Additionally, I noted that plaintiffs "offer no justification for their delay in filing the Motion to Amend[.]"  *Id*.

to supplement its responses to seven of plaintiffs' interrogatories, so as to identify more specifically the documents and information noted in its responses; respond to one of plaintiffs' interrogatories, but for a reduced time period; and produce a privilege log.  *Id*. at 4-6.

Neither side noted an appeal to this Court.  *See* Fed. R. Civ. P. 72(a).[11]  And, the defendants submitted their supplemental responses.  At that time, plaintiffs did not complain to Judge Gesner that the information was incomplete.  Indeed, to my knowledge the issue was not raised until May 24, 2023.

On November 9, 2021, plaintiffs moved for a 60-day extension of the deadline to oppose defendants' motions for summary judgment.  ECF 89.  They asserted that the forthcoming discovery was needed for their opposition, and wanted time to review the material.  *Id*. at 1-3. They also cited a desire to make "inquiries" as to "outstanding issues that Judge Gesner did not address," such as their desire to take written depositions.  *Id*. at 2.

In a Memorandum (ECF 94) and Order (ECF 95) of November 12, 2021, I denied defendants' summary judgment motions as premature, without prejudice, in view of Judge Gesner's ruling ordering defendants to provide additional discovery.  I gave defendants until December 15, 2021, to file a second round of summary judgment motions.  In addition, I allowed plaintiffs to file their opposition to defendants' summary judgment motions within 28 days of the date on which the later of the two summary judgment motions was filed.  As to plaintiffs' reference in ECF 89 to written depositions, I noted that discovery had closed on September 24, 2021, and that Judge Gesner had not reopened discovery in her ruling (*i.e.*, ECF 84).  ECF 94 at 4 n.3.

---

[11] Fed. R. Civ. P. 72(a) provides that within fourteen days, a party may object to a magistrate judge's ruling on non-dispositive matters, such as discovery orders.  *Id.*; *see* 28 U.S.C. § 636(b)(1)(A); Local Rule 301.5(a); *Tafas v. Dudas*, 530 F. Supp. 2d 786, 792 (E.D. Va. 2008).

Plaintiffs sent a letter to Judge Gesner on December 6, 2021, to "inquire as to [her] intent" in her ruling.  ECF 107.  They asserted that they had "explained that [they] wanted to take written depositions," and had raised the issue with the court in their motion to extend discovery of June 4, 2021 (ECF 39), as well as in their "informal dispute letter."[12]  But, they pointed out that Judge Gesner's ruling was "silent on that issue."  ECF 107 at 1.  Therefore, they asked Judge Gesner to "clarify [her] intent on this issue."  *Id*.

I pause to note that in ECF 39, plaintiffs did, indeed, reference a desire to take written depositions after receiving all discovery.  But, that motion was disposed of by Judge Gesner on June 15, 2021. *See* ECF 47.  Notably, in ECF 47 Judge Gesner explicitly stated that she "decline[s] to limit the type of discovery that may be conducted and do[es] not express an opinion on what discovery may be appropriate."  *Id*. at 1.  In any event, such a discovery tool must be used during the discovery period.

Safeguard and PNC subsequently renewed their summary judgment motions.  *See* ECF 109 (Safeguard); ECF 110 (PNC).[13]

On December 9, 2021, Judge Gesner responded to ECF 107.  She said: "[T]he court will not take further action as plaintiffs have not followed my informal discovery dispute procedure."

---

[12] Plaintiffs' informal dispute letter does not appear to be docketed.

[13] Each defendant has its own counsel.  They did not present all of the same summary judgment arguments.  However, because of the initial denial of their summary judgment motions, with a right to refile, each defendant had ample time to review the motion of the codefendant.  Each could have added to its motion an argument that had been made by the codefendant but omitted by that defendant in its first summary judgment motion.  For example, Safeguard could have included an argument as to vicarious liability, such as the one made by PNC, when it renewed its summary judgment motion.  And, PNC could have expanded its punitive damages argument, to be consistent with Safeguard.  Neither party did so.  I ruled only on the issues that were presented.

ECF 108.  She cited ECF 43, outlining that procedure.  And, she directed the parties to bring any dispute to her attention by use of those procedures.  *Id.*

In a letter to Judge Gesner, received on December 23, 2021, plaintiffs asserted that they had already followed this procedure, appearing to refer to the discovery disputes that culminated in Judge Gesner's ruling of November 1, 2021.  ECF 115.  They asked Judge Gesner to "clarify exactly" what she wanted them to do.  *Id.*

By Memorandum of January 3, 2022 (ECF 120), I noted that "Plaintiffs' arguments as to written depositions [were] . . . not persuasive."  *Id.* at 7.  This was because "[d]iscovery closed on September 24, 2021, and Judge Gesner's ruling did not reopen discovery to permit additional discovery."  *Id.*  Additionally, I noted that plaintiffs had "not articulated any specific reasons as to why written depositions are necessary to justify their opposition to summary judgment", and that it was unclear "why plaintiffs did not complete discovery in the ample time provided."  *Id.*  However, I did extend the deadline for plaintiffs to respond to defendants' summary judgment motions until January 26, 2022.  *Id.*; *see also* ECF 121.  Plaintiffs subsequently filed their opposition (ECF 134), supported by voluminous exhibits.  ECF 135; ECF 136; ECF 137; ECF 138; ECF 141; ECF 145.

Judge Gesner responded to ECF 115 on January 5, 2022.  *See* ECF 122.  She noted that the issue of written depositions "was not raised in either the joint letter filed by plaintiffs and defendant Safeguard (ECF No. 55) or the joint letter filed by plaintiffs and defendant PNC Bank, N.A. (ECF No. 57)."  *Id.* at 1.  Additionally, she stated that "if plaintiffs would like [her] assistance in resolving a dispute with respect to written depositions, they are directed to use [her] informal discovery dispute procedure."  *Id.*

By Memorandum Opinion (ECF 156) and Order (ECF 157) of June 17, 2022, I granted the summary judgment motions in part and denied them in part.

Briefly, with respect to Safeguard's motion, I granted summary judgment as to plaintiffs' breach of contract claim and as to plaintiffs' request for punitive damages.  ECF 157, ¶ 1.  But, Safeguard did not seek summary judgment as to the matter of vicarious liability.

In regard to PNC's motion, I granted summary judgment as to any claim of vicarious liability for the alleged intentional theft, damage, and destruction of plaintiffs' personal property allegedly committed by Safeguard's contractor, Alpha Business Services, LLC, a Maryland company providing property preservation services.  *Id.* ¶ 2.  I also granted summary judgment as to any claim for damages for emotional distress and punitive damages with respect to plaintiffs' breach of contract claim.  *Id.*  However, PNC did not move for summary judgment as to punitive damages with respect to the trespass or invasion of privacy claims, and therefore I did not consider the issue as to PNC.  *See* ECF 156 at 77 n. 35.

The parties subsequently submitted several motions.  Specifically, PNC moved in limine to exclude evidence at trial pertaining to punitive damages and "dismissing Plaintiff's [sic] demand for punitive damages as to the claims against PNC."  ECF 163 at 1.  Safeguard requested leave to file a second motion for partial summary judgment regarding vicarious liability.  ECF 164.  And, plaintiffs sought reconsideration of certain rulings by the Court in the summary judgment opinion. *See* ECF 166.

By Memorandum (ECF 185) and Order (ECF 186) of October 4, 2022, the Court denied these motions.  As to PNC's motion, I noted that it lacked the necessary specificity with respect to the evidence sought to be excluded.  ECF 185 at 5.  In regard to Safeguard's motion, I stated that Safeguard did not demonstrate adequate diligence to justify granting defendant a second bite at the

summary judgment apple.  *Id.* at 9.  And, because plaintiffs' motion to reconsider largely repeated the same arguments made in their opposition to summary judgment, I denied their motion.  *Id.* at 13.

As indicated, the discovery period was about ten months long.  Prior to the close of discovery, plaintiffs did not identify any expert witnesses.  However, at a status conference held in court on August 31, 2022 (ECF 178), plaintiffs advised the Court that they wished to identify expert witnesses.  In particular, plaintiffs noted that the Scheduling Order (ECF 14) did not specify a deadline to name experts, and therefore, under Fed. R. Civ. P. 26(a)(2)(D)(i), they have until 90 days before trial to make their expert disclosures.[14]  Accordingly, by Order of September 1, 2022 (ECF 179), the Court permitted plaintiffs to submit a motion to extend discovery in order to name experts.  And, on September 22, 2022, plaintiffs filed a "Motion for Belated Disclosure of Experts."  ECF 181.

Defendants filed a joint response on September 29, 2022.  ECF 182.  Although defendants identified objections to the motion, as well as grounds for denial, they stated that they were "agreeable to the Court entering an order that: . . . allows Plaintiffs 30 days to identify their experts and fully comply with the requirements of Rule 26(a)(2)[.]"  *Id.* at 4.  However, the following day plaintiffs filed a "Motion to Withdraw Plaintiffs' Motion for Belated Disclosure of Experts."  ECF 183.  And, on October 3, 2022, the Court granted that motion.  ECF 184.

Also on October 3, 2022, PNC sent a letter to plaintiffs (ECF 200-1, the "Letter").  The Letter stated, in part, *id.* at 2:

> Defendants understand by your Motion to Withdraw that you as Plaintiffs will not seek to introduce testimony from any expert witness in support of your claims at

---

[14] Rule 26(a)(2)(D)(i) provides: "Absent a stipulation or a court order, the disclosures must be made . . . at least 90 days before the date set for trial . . . ."

trial. We further understand Judge Hollander's order granting this motion as confirming this fact for the record.

After reviewing the requirements of Fed. R. Civ. P. 26(a)(2), the Letter concluded, *id.* at 2-3:

> Accordingly, Defendants conclude that Plaintiffs will not seek to admit expert opinion testimony at trial. Defendants will proceed with pretrial preparations in accordance with the foregoing. If we have misunderstood your intentions in any way, you should clarify very promptly. Otherwise we will assume that Plaintiffs will not seek to have expert testimony admitted at trial.

According to defendants, plaintiffs never responded to the Letter. ECF 200 at 3. But, on March 30, 2023, nearly six months after receiving the Letter, and less than 90 days before trial is set to begin, plaintiffs submitted a "Renewed Motion for Belated Disclosure of Exlperts" [sic]. ECF 199.

### III. Legal Standard

"A motion in limine is a request for guidance by the court regarding an evidentiary question." *United States v. Luce*, 713 F.2d 1236, 1239 (6th Cir. 1983), *aff'd*, 469 U.S. 38 (1984). The purpose of a motion in limine is "'to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial.'" *United States v. Slagle*, SAG-15-392, 2015 WL 5897740, at *1 (D. Md. Oct. 6, 2015) (quoting *Banque Hypothecaire Du Canton De Geneve v. Union Mines, Inc.*, 652 F. Supp. 1400, 1401 (D. Md. 1987)).

Notably, "motions in limine are meant 'to streamline the case for trial and to provide guidance to counsel [and the parties] regarding evidentiary issues.'" *Osei v. Univ. of Maryland Univ. Coll.*, 202 F. Supp. 3d 471, 479 n.5 (D. Md. 2016) (quoting *Adams v. NVR Homes, Inc.*, 141 F. Supp. 2d 554, 558 (D. Md. 2001)). Such motions help to streamline a case, because they enable "'a court to rule in advance on the admissibility of documentary or testimonial evidence and thus

expedite and render efficient a subsequent trial.'"  *INSLAW, Inc. v. United States*, 35 Fed. Cl. 295, 303 (1996) (citation omitted); *see Changzhou Kaidi Elec. Co., Ltd. v. Okin Am., Inc*., 102 F. Supp. 3d 740, 745 (D. Md. 2015) (motions in limine "are 'designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions.'" (internal quotation omitted)).

However, evidentiary rulings prior to trial are generally preliminary or tentative, made in the discretion of the court, for the purpose of assisting in preparation for trial.  *Luce*, 713 F.2d at 1239-40; *see Adams* at 558 ("A ruling on a motion in limine is no more than a preliminary or advisory opinion that falls entirely within the discretion of the district court").  When the evidence is actually offered at trial, the trial court may change its ruling.  *Luce*, 713 F.2d at 1239.

Of relevance here, a judge may defer an issue for trial, or make a definitive or final ruling on the merits.  K. Broun, et al., *McCormick on Evidence*, § 52 at 353-54 (7th ed. 2013).  If the Court makes a "definitive ruling" before trial, under F.R.E. 103(b), the non-prevailing party "need not renew an objection or offer of proof to preserve a claim of error for appeal."  *See* 21 C. Wright and K. Graham, *Federal Practice and Procedure*, § 5037.16, at 800 (2d ed. 2005).  Generally, courts should grant a motion in limine "only when the evidence is clearly inadmissible on all potential grounds."  *Dorman v. Anne Arundel Med. Ctr*., MJG-15-1102, 2018 WL 2431859, at *1 (D. Md. May 30, 2018) (quoting *Emami v. Bolden*, 241 F. Supp. 3d 673, 681 (E.D. Va. 2017)).

"'A district court is accorded a wide discretion in determining the admissibility of evidence under the Federal Rules.'"  *Sprint/United Management Co. v. Mendelsohn*, 552 U.S. 379, 384 (2008) (quoting *United States v. Abel*, 469 U.S. 45, 54 (1984)).  Under Rule 402 of the Federal Rules of Evidence ("F.R.E."), "[r]elevant evidence is admissible" unless rendered inadmissible pursuant to some other legal provision, but "[i]rrelevant evidence is not admissible."  And, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would

be without the evidence; and (b) the fact is of consequence in determining the action." F.R.E. Rule 401.

Relevant evidence is not always admissible, however. Under F.R.E. Rule 403, even if the evidence is relevant, the court "may exclude [it] if its probative value is substantially outweighed by a danger of . . . unfair prejudice," confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *See also United States v. Gondres-Medrano*, 3 F.4th 708, 719 (4th Cir. 2021).

Of import here, "'where evidence is probative, "the balance under Rule 403 should be struck in favor of admissibility, and evidence should be excluded only sparingly."'" *United States v. Miller*, 61 F.4th 426, 429 (4th Cir. 2023) (citations omitted); *see also United States v. Udeozor*, 515 F.3d 260, 264-65 (4th Cir. 2008); *United States v. Lentz*, 524 F.3d 501, 525 (4th Cir. 2008). In *Miller*, 61 F.4th 426, a criminal case, the Fourth Circuit characterized Rule 403 as setting a "high bar" for exclusion. *Id.* at 429. To exclude evidence, "it must be unfairly prejudicial." *Id.* And, the court "'will find undue prejudice only if there is a genuine risk that the emotions of a jury will be excited to irrational behavior, and this risk is disproportionate to the probative value of the offered evidence.'" *Gioiso v. Thoroughgood's Transport, LLC*, ADC-16-3841, 2018 WL 5281903 at *3 (D. Md. Oct. 24, 2018) (quoting *Adams v. NVR Homes, Inc*., 141 F. Supp. 554, 558 (D. Md. 2001)); *see also United States v. Powers*, 59 F.3d 1460, 1468 (4th Cir. 1995).

### IV. Discussion

#### A. Issues Raised at the Hearing

At the hearings on May 19, 2023, and May 24, 2023, considerable time was spent on various discovery issues. As recounted above, Judge Gesner was presented with multiple discovery disputes concerning various discovery issues. *See* ECF 107; ECF 115. On January 5,

17

2022, Judge Gesner responded to certain concerns expressed by plaintiffs, and told plaintiffs to use her informal discovery dispute procedure.  ECF 122.  This appears to be the last filing involving Judge Gesner, either to her or from her, related to discovery disputes.  *See* Docket.

As mentioned, at the hearing on May 24, 2023, plaintiffs raised for the first time with this Court their dissatisfaction with the sufficiency of the supplemental discovery responses provided by defendants in November 2021, pursuant to Judge Gesner's Order (ECF 84).  In particular, plaintiffs now complain that defendants failed to produce, in response to plaintiffs' interrogatories, the full names, addresses, and phone numbers of every person having personal knowledge of the facts material to the case.

On August 31, 2022, as noted, the Court had set a deadline for motions in limine.  *See* ECF 179; ECF 180.  Although plaintiffs availed themselves of their right to file motions (ECF 192, ECF 199), they make no mention about the inadequacy of defendant's supplemental discovery responses or defense counsel's unwillingness to provide plaintiffs with full names and contact information for certain individuals.

At the motion hearing, the parties referenced a letter sent by plaintiffs to defense counsel on February 21, 2023, more than a year after Judge Gesner's last order concerning discovery. Safeguard Motion Ex. 3.  In the letter, plaintiffs provided a tentative list of the witnesses they intend to call at trial and requested that defendants provide the contact information.  *Id*. at 1-2.  A total of 26 names were listed, six of whom did not have a last name.  *Id*.  Plaintiffs explained that they do not know the surnames because of defendants' deficient interrogatory responses.

Counsel for Safeguard responded to plaintiffs' letter on March 14, 2023.  Safeguard Motion Ex. 4.  He noted that "certain names are incomplete," and that "the vast majority of the individuals are no longer employed by Safeguard."  *Id*. at 1.  Additionally, he noted that discovery was closed,

and that plaintiffs "never requested contact information in [their] 'motion to compel.'" *Id*.  The letter concluded by stating that "Safeguard has no obligation to provide [plaintiffs] with such contact information," and that "[a] corporate representative from Safeguard will testify at trial with respect to the claims and defenses in case." *Id*.

Throughout the litigation, which began in late 2020, plaintiffs have proven themselves quite adept at filing motions.  *See* Docket.  Yet, no motion was ever filed with this Court as to the issue of defendants' alleged failure to comply with Judge Gesner's Order of November 1, 2021 (ECF 84).  Rather, virtually on the eve of trial, plaintiffs raised the matter for the first time.  In my view, plaintiffs' silence on the issue up until this point constitutes a waiver of their complaint.[15]

Despite the belatedness of plaintiffs' complaint, the Court asked defendants' counsel, as a courtesy, if they would attempt to locate three of the individuals identified by plaintiffs.  Specifically, plaintiffs inquired about Sheila Watson, Michelle Sewell, and an individual named Vera.  Defense counsel stated that Sewell and Vera may still be employees of Safeguard and PNC, respectively, but that Watson no longer works for Safeguard.  Additionally, defense counsel noted that these individuals likely live in Ohio.  Under Fed R. Civ. P. 45, non-parties can be compelled to appear at a deposition by subpoena, but only if it takes place within 100 miles of that person's residence, place of employment, or place where the person regularly conducts business in person.  Fed. R. Civ. P. 45(c).  Nevertheless, defense counsel said they would comply with the Court's request.

---

[15]  Plaintiffs seemed to suggest at the hearing that they should be able to complain about defendants' inadequate discovery if defendants are allowed to raise the issue of plaintiffs' belated disclosure of documents and witnesses.  But, the situations are not comparable.  Defendants are addressing potential witnesses and documents they claim were made known only recently, primarily in the pretrial order, and not in discovery, as requested.  That is an altogether different circumstance.

I now turn to the motions that were briefed in advance of the hearing.

### A. Safeguard's Motion

The Safeguard Motion (ECF 189) actually contains multiple motions.  Safeguard has moved to exclude evidence on a variety of topics and for a variety of reasons.

As a preliminary matter, plaintiffs claim throughout their opposition (ECF 206) that Safeguard waived its motion in limine arguments because defendant either raised the same issues in its motion for summary judgment or it should have.  *See, e.g.,* ECF 206 at 2, 4, 9, 10, 12. However, Safeguard's omission of evidentiary arguments in a motion for summary judgment does not amount to a waiver.

Plaintiffs also argue that the "matters are 'curable' with jury instructions," and thus, the Court should wait until the matters are raised at trial before ruling on the evidentiary issues.  *Id.* at 2-3.  But, as noted, the Court has been asked to rule, and making rulings in advance of trial helps to "narrow the evidentiary issues for trial and . . . eliminate[s] unnecessary trial interruptions." *Changzhou Kaide Elec. Co.*, 1-2 F. Supp. 3d at 745 (D. Md. 2015).  In other words, such rulings in advance of trial may promote efficiency at trial.

Furthermore, some matters may not be curable with jury instructions, because a bell cannot be unrung; jurors may not be able to ignore what they should not have seen or disregard an argument that should not have been presented.  Indeed, to allow inadmissible evidence and arguments to be seen and heard, even with a limiting instruction, could be unfairly prejudicial.  *See Smith v. Balt. City Police Dep't.*, 840 F.3d 193, 205 (4th Cir. 2016) ("Once the jury heard the evidence [of prior arrests], it is reasonable that they assumed 'where there's smoke, there's fire.' And again, the limiting instructions in this case failed to mitigate the prejudice naturally flowing from this questioning.") (internal citations omitted).

### 1. Evidence of other Claims and Lawsuits Involving Safeguard

Safeguard states: "It is anticipated that Plaintiffs intend to introduce evidence relating to other claims, lawsuits, and settlements involving Safeguard, including evidence concerning assurance agreements with the Maryland Attorney General and Illinois Attorney General."  ECF 189 at 6.  Indeed, plaintiffs have asserted that such evidence is admissible because the "assurance agreements" show motive, intent, and a pattern of misconduct.  ECF 206 at 4.

Plaintiffs included both documents in their opposition to the summary judgment motions. *See* ECF 135-2 ("Assurance of Discontinuance"); ECF 135-3 ("Illinois Complaint for Injunctive and Other Relief").  At multiple points in the opposition, plaintiffs cited to these documents as, in essence, evidence of Safeguard's wrongdoing or culpability in this case, or to establish a genuine dispute of material fact.  *See, e.g.*, ECF 134 at 8, 9, 16, 30.

The Assurance of Discontinuance was executed in August 2015.  ECF 135-2 at 22, 23. According to a press release issued by the Maryland Office of the Attorney General (ECF 135-1), the Assurance of Discontinuance required that "Safeguard will reform its practices to protect homeowners from future abuses and will return money to impacted Maryland."  *Id*. at 1.  In particular, the Consumer Protection Division of the Office of the Maryland Attorney General alleged that "Safeguard failed to properly screen, train and supervise its network of vendors who perform inspection and preservation work in Maryland."  *Id*.  The Maryland Attorney General noted that "[e]ven when a home is in default or foreclosure, lenders and their agents must still comply with state law and respect the rights of homeowners and occupants."  *Id*.  And, the Assurance of Discontinuance stipulated that "Safeguard will pay $167,000 in restitution to Marylanders harmed by the alleged actions."  *Id*. at 2.

21

This agreement took place two years before the occurrences here.  Notably, Safeguard did not admit wrongdoing, and agreed to the payment of a rather nominal sum.  Regardless, whatever the conduct of Safeguard that was addressed in 2015, such conduct does not constitute proof of conduct two years later.

The Illinois Complaint against Safeguard was filed by the Illinois Attorney General on behalf of the people of Illinois in September 2013 for violations of the Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.*  ECF 135-3 at 1.  It is merely a lawsuit. In other words, it consists only of allegations, not evidence of wrongdoing.

In the context of the summary judgment motions, I observed that "neither document establishes any of these allegations against Safeguard: the Illinois document is just a complaint, and the Maryland document, although it resolved the Attorney General's claims against Safeguard, explicitly specifies that it is not an admission or concession of facts or liability by Safeguard." ECF 156 at 7-8 (citing ECF 135-2, ¶ 17).

In my view, plaintiffs cannot clear a low bar of relevance.  As stated, under F.R.E. Rule 401, evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  The proposed evidence does not satisfy either criterion.  The documents have no probative value, because Safeguard's conduct in unrelated matters in 2013 or 2015 does not prove the facts of this case.

Furthermore, such evidence is tantamount to prior bad acts, which are inadmissible to show that Safeguard acted in the same or similar way in the case at bar.  ECF 156 at 8; *see* Fed. R. Evid. 404(b)(1).  Apart from relevancy, "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in

accordance with the character." Fed. R. Evid. 404(b)(1); *see also Sparks v. Gilley Trucking Co.*, 992 F.2d 50, 51 (4th Cir. 1993) (concluding that prior evidence of speeding was inadmissible to show that the driver was speeding at the time of the incident at issue); *Johnson v. Cap. One Servs., LLC*, BB-18-62058, 2019 WL 5190788, at *2 (S.D. Fla. Oct. 15, 2019) ("[E]vidence pertaining to other litigation and settlements is irrelevant, and the lack of probative value of any such evidence is substantially outweighed by the danger of unfair prejudice."). Evidence of the Illinois Complaint and the agreement with the Maryland Attorney General would not establish any wrongdoing or culpability on the part of Safeguard in the context of this case. *See* ECF 156 at 8.

Even if such evidence were not precluded by F.R.E. 401 or F.R.E. 404(b), admissibility fails under F.R.E. 403. As indicated, under F.R.E. 403, the court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

To be sure, when evidence is probative, "'the balance under Rule 403 should be struck in favor of admissibility . . . .'" *Miller*, 61 F.4th at 429. But, the documents are not probative, because even if Safeguard engaged in wrongful conduct in 2013 or 2015, it does not prove wrongdoing in 2017. Evidence as to unrelated claims and lawsuits involving Safeguard would amount to a proverbial detour, unnecessarily prolonging the trial. Such evidence also poses a serious risk of misleading and confusing the jury, because the defendants cannot be liable for conduct in 2017 based on what occurred in 2015.

### 2. Evidence Concerning Documents Not Produced in Discovery

In Safeguard's Motion, Safeguard states: "Plaintiffs were asked [during discovery] to state all facts and identify all documents that supported their claimed damages and were asked to

produce such documents." ECF 189 at 9; *see* 109-8 at 7-9. They have identified several documents that they claim were not produced by plaintiffs prior to the close of discovery. ECF 189 at 4. According to Safeguard, the documents "appeared for the first time in Plaintiffs' Opposition to the Motions for Summary Judgment." ECF 217 at 4. And, these documents were identified again in plaintiffs' Pretrial Order. *Id*. (citing ECF 209). Therefore, Safeguard seeks to bar the admission of these documents at trial. ECF 189 at 8.

The documents include, *id*.:

- ECF 135-4 at 1-21: Articles concerning leaves and lawn care.
- ECF 135-4 at 24-25: Photograph purportedly showing the need for a new roof.
- ECF 135-5 at 1-4 and 136-4: Health information related to Mr. Norris.
- ECF 136 at 2-5: Letter from Steven Klein, Real Estate Appraiser, regarding proposal to do appraisal and CV.
- ECF 137 at 1-37: Plaintiffs' itemization of damages.
- ECF 137-16 at 9-10: Affidavit of therapist, Albert Phillips.
- ECF 137-16 at 11-12: Article concerning Atopic Dermatitis.

Further, Safeguard asserts, ECF 217 at 4: "It also appears from Plaintiffs' pretrial order that Plaintiffs may be attempting to introduce other documents at trial that were not previously disclosed prior to the close of discovery, including certain health related information concerning Mr. Norris." Safeguard maintains that "[b]ecause such documents were not produced prior to the close of discovery, such evidence should not be admissible at trial pursuant to Federal Rule of Civil Procedure 37(c)(1)." *Id*.

Plaintiffs suggest that they were not required to disclose all documents by the close of discovery because they had "the right to supplement . . . ." ECF 206 at 6. And, at the motions hearing, plaintiffs seemed to contend that many of the documents that Safeguard is claiming plaintiffs did not produce were, in fact, produced. Plaintiffs also stated that, during discovery, they provided the name of their therapist, Albert Philips, to defendants, but they did not have his affidavit during discovery. Plaintiffs contend that defendants "had a chance to depose him", and

that to the extent that "Phillips failed to respond to their subpoena, Defendants could have asked for an extension of discovery and/or asked the Court to order Mr. Phillips to comply with the subpoena if it was in fact a proper subpoena." *Id.* at 5-6.[16]  In addition, at the hearing, they claimed they produced a disc with 9,000 pages of Mr. Norris's medical records.[17]

The Fourth Circuit has given district courts a wide berth to control discovery.  *See United States v. Ancient Coin Collectors Guild*, 899 F.3d 295, 323 (4th Cir. 2018).  And, there are many discovery provisions to navigate.  Notably, pursuant to the Court's Local Rules, "parties and counsel have an obligation to cooperate in planning and conducting discovery . . . ."  Local Rule, App'x A, Guideline 1(a).

Fed. R. Civ. P. 26(e) concerns a party's continuing obligation to supplement or correct a disclosure or a response made in discovery.  But, it is not a substitute for the duty to comply with discovery obligations in the first instance.  So, if the documents in issue were timely requested by the defense during discovery, and plaintiffs did not lodge a valid objection, plaintiffs were obligated to provide the requested material during the discovery period, not afterwards.  They claim that they did, but they are sometimes a bit vague in supporting such assertions.

As noted, plaintiffs complained that defendants did not comply with their discovery obligations because they failed to provide complete names and contact information of persons with

---

[16] Apparently, defendants subpoenaed Phillips for a deposition but he failed to appear.

[17] Fed. R. Civ. P 33(d) states that a party responding to an interrogatory may produce business records if the answer "may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records . . . .", and "if the burden of deriving or ascertaining the answer will be substantially the same for either party . . . ."  However, the responding party must provide "sufficient detail to enable the interrogating party to locate" the information.  *Id.*

It does not appear that plaintiffs provided identifying information to assist in the review of 9,000 pages.  But, defendants did not raise the issue.  On the other hand, counsel for Safeguard was not actually sure that Safeguard ever received the disc.

knowledge, as discussed earlier.  But, defendants' claim is not about the sufficiency of a response.

Rather, it is a claim concerning a failure to disclose in the first instance.  In other words, according

to defendants, plaintiffs are aiming to introduce documents that they never disclosed and to call

witnesses who were never disclosed, despite defendants' request for the names of all persons with

knowledge.

Notably, "[o]ne of the most important, but apparently least understood or followed, of the

discovery rules is Fed. R. Civ. P. 26(g), enacted in 1983." *Mancia v. Mayflower Textile Servs.*

*Co.*, 253 F.R.D. 354, 357 (D. Md. 2008) (Grimm, M.J.).[18]  This rule is titled "Signing Disclosures

And Discovery Requests, Responses, and Objections."  It states, in relevant part., *id.*:

> (1) *Signature Required; Effect of Signature.*  Every disclosure under Rule 26(a)(1) or (a)(3) and every discovery request, response, or objection must be signed by at least one attorney of record in the attorney's own name—or by the party personally, if unrepresented—and must state the signer's address, e-mail address, and telephone number.  By signing, an attorney or party certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry:
>
> > (A) with respect to a disclosure, it is complete and correct as of the time it is made; and
> >
> > (B) with respect to a discovery request, response, or objection, it is:
> >
> > > (i) consistent with these rules and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law;
> > >
> > > (ii) not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and
> > >
> > > (iii) neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action.

---

[18] Judge Grimm authored *Mancia* when he was a United States Magistrate Judge.  He later became a District Judge in Maryland.  However, he recently left the bench.

* * * * *

(3) *Sanction for Improper Certification.*  If a certification violates this rule without substantial justification, the court, on motion or on its own, must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both.  The sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation.

As provided by the Advisory Committee Notes, "Rule 26(g) is designed to curb discovery abuse by explicitly encouraging the imposition of sanctions."  Rule 26(g) "imposes an affirmative duty to engage in pretrial discovery in a responsible manner that is consistent with the spirit and purposes of Rules 26 through 37."  *Id.*  Accordingly, "[t]he subdivision provides a deterrent to both excessive discovery and evasion by imposing a certification requirement that obliges each attorney to stop and think about the legitimacy of a discovery request, a response thereto, or an objection."  *Id.*  As Judge Grimm explained in *Mancia*, 253 F.R.D. at 360:

> Rule 26(g) charges those responsible for the success or failure of pretrial discovery—the trial judge and the lawyers for the adverse parties—with approaching the process properly: discovery must be initiated and responded to responsibly, in accordance with the letter and spirit of the discovery rules, to achieve a proper purpose (i.e., not to harass, unnecessarily delay, or impose needless expense), and be proportional to what is at issue in the litigation, and if it is not, the judge is expected to impose appropriate sanctions to punish and deter.

Rule 37(c)(1) provides, in relevant part: "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  In addition to, or in place of automatic exclusion, Rule 37(c) also permits the court to "order payment of the reasonable expenses, including attorney's fees, caused by the failure"; "inform the jury of the party's failure"; and "impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi)."  Fed. R. Civ. P. 37(c)(1).  And,

under Fed. R. Civ. P. 37(b)(2)(A), the Court may, *inter alia*, bar the introduction of "designated matters in evidence."  Rule 37(b)(2)(A)(ii).

Of import here, self-represented litigants must adhere to the Federal Rules of Civil Procedure and the Local Rules. *See, e.g.*, *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (noting a *pro se* litigant must follow the same rules of procedure that govern other litigants); *Burgs v. Sissel*, 745 F.2d 526, 528 (8th Cir. 1984) (per curiam) (same); *see also* Local Rule 101.1.  And, substantial case law has developed regarding the application of Rule 37(c)(1).  "[T]he basic purpose of Rule 37(c)(1)" is "preventing surprise and prejudice to the opposing party." *Southern States Rack And Fixture, Inc. v. Sherin-Williams Co.*, 318 F.3d 592, 596 (4th Cir. 2003).

The Fourth Circuit has indicated that Rule 37(c)(1) imposes an "'automatic sanction' of exclusion," and that the "general rule" is that any evidence that a party has "failed to properly disclose" should be excluded.  *Id*. at 595 n.2, 596 (quoting 1993 Advisory Committee Note to Fed. R. Civ. P. 37).  This is because "[a] party that fails to provide [Rule 26] disclosures unfairly inhibits its opponent's ability to properly prepare, unnecessarily prolongs litigation, and undermines the district court's management of the case."  *Saudi v. Northrop Grumman Corp*., 427 F.3d 271, 278-79 (4th Cir. 2005).

"The only exceptions to exclusion [under Rule 37(c)(1)] are when the nondisclosure is substantially justified or harmless." *Contech Stormwater Solutions, Inc. v. Baysaver Technologies, Inc.*, 534 F. Supp. 2d 616, 623 (D. Md. 2008).  And, "[t]he party failing to disclose information bears the burden of establishing that the nondisclosure was substantially justified or was harmless." *Bresler v. Wilmington Trust Co.*, 855 F.3d 178, 190 (4th Cir. 2017).

"District courts are accorded 'broad discretion' in determining whether a party's nondisclosure or untimely disclosure of evidence is substantially justified or harmless." *Id.* (quoting *Wilkins v. Montgomery*, 751 F.3d 214, 222 (4th Cir. 2014)). "[I]n exercising its broad discretion to determine whether a nondisclosure of evidence is substantially justified or harmless for purposes of a Rule 37(c)(1) exclusion analysis," a district court is guided by five factors: "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence." *Southern States*, 318 F.3d at 597.

According to the Fourth Circuit, "[t]he first four factors listed above relate primarily to the harmlessness exception, while the last factor, addressing the party's explanation for its nondisclosure, relates mainly to the substantial justification exception." *Bresler*, 855 F.3d at 190. Of relevance here, the fourth factor, concerning the importance of the evidence, "must be viewed from the perspective of both parties." *Southern States*, 318 F.3d at 598 (internal quotation marks omitted). And, "'the more important the evidence, the more important it is for the proponent to disclose [the evidence] in a timely manner because it is more likely to prejudice the opposing party.'" *Benjamin v. Sparks*, 986 F.3d 332, 343 (4th Cir. 2021) (citation omitted) (brackets in *Benjamin*; internal quotation marks omitted).

Notably, a district court is "not *required* to tick through each of the *Southern States* factors." *Wilkins*, 751 F.3d at 222 (emphasis in original); *accord Benjamin*, 986 F.3d at 343; *Hoyle v. Freightliner*, LLC, 650 F.3d 321, 330 (4th Cir. 2011). Moreover, "Rule 37(c)(1) does not require a finding of bad faith or callous disregard of the discovery rules." *Southern States*, 318 F.3d at 596.

Plaintiffs argue that sanctions under Rule 37(c)(1) are not warranted because any failure to disclose was harmless, asserting that if it were not harmless, Safeguard "would have brought this matter before the Court in its Reply, and this Court would have addressed it in its Memorandum neither [of] which occurred." ECF 206 at 5. Although it is unclear to which "Reply" or "Memorandum" plaintiffs are referring, the issue was raised in Safeguard's reply (ECF 152) to plaintiff's opposition (ECF 134) to Safeguard's motion for summary judgment (ECF 109), where Safeguard identified the same documents listed above. *See* ECF 156 at 4 (citing ECF 152 at 5, 18). However, as the Court previously noted, Safeguard did not "identify any discovery requests it made for which these materials would have been responsive." ECF 156 at 4; *see also Alexander v. Boeing Co.*, No. C13-1369 RAJ, 2014 WL 3900574, at *4 n.4 (W.D. Wash. Aug. 11, 2014) ("Plaintiff also seeks to exclude [certain exhibits] because they were not produced in discovery. However, plaintiff has not demonstrated that she requested these types of documents during discovery, and defendant failed to produce them. Accordingly, exclusion of these documents as a discovery sanction for failure to produce the documents is not an available remedy.").

In the context of summary judgment, I denied Safeguard's request to strike the documents disclosed in plaintiffs' opposition. In light of the *Southern State* factors, the documents first disclosed in plaintiffs' opposition to the motions for summary judgment will not be barred merely because they were not timely produced. But, this conclusion should not be construed as a ruling on the admissibility as to any of this evidence.

In response to Safeguard's contention that there may be additional documents that plaintiffs plan to introduce at trial, which were not previously produced, I decline to rule in advance.

However, once plaintiffs provide defendants with their exhibit list, the Court will be in a better position to consider this contention.[19]

### 3. Expert Testimony

Safeguard states that "it appears from Plaintiffs' Opposition to the Motions for Summary Judgment and many of the appended exhibits that Plaintiffs intends [sic] to offer expert testimony at trial." ECF 189 at 11. However, Safeguard points out that plaintiffs have not identified any expert witnesses for trial, nor have they provided any reports that comply with Fed. R. Civ. P. 26(a)(2). I shall address this contention together with my consideration of plaintiffs' Renewed Motion.

### 4. Evidence of Damages

Safeguard advances four arguments as to plaintiffs' claims regarding damages. *See* ECF 189 at 17-24.

First, Safeguard argues: "Plaintiffs Should be Precluded from Introducing Evidence or Making Arguments About Damage to and Theft from Piggybank or Any Other Alleged Damages Sustained by Son." ECF 189 at 17. According to Safeguard, because the piggy bank belonged to plaintiffs' son, plaintiffs "lack standing to advance such claims on behalf of their son because he has reached the age of majority." ECF 189 at 17. They cite *Doe #1 v. Montgomery Cnty. Bd. Of Educ.*, PJM-21-0356, 2021 WL 6072813, at *7 ("Because John Doe #1M now has standing to bring his claims himself, his parents no longer have standing to proceed as his next friends.").

Second, Safeguard argues that plaintiffs "provided no documents or evidence to support" their contention as to a diminution in the value of their Property, in the amount of $234,000," nor

---

[19] At the hearing on May 24, 2023, I set a deadline of the close of business on May 25, 2023, for completion of plaintiffs' exhibit list.

have they provided any documents or evidence showing that any decrease in Property was caused by Defendants." ECF 189 at 18.  Third, Safeguard contends: "Plaintiffs have provided no evidence or documents showing that there was mold in the Property or that any such mold was caused by Defendants." *Id*. at 20.  And, they argued strenuously at the hearing that a claim of mold requires expert testimony to establish that the suspected mold is, in fact, mold, and as to causation.  Fourth, Safeguard asserts: "Plaintiffs have not provided evidence to support their damages claims as it relates to their personal items."  *Id*. at 24.

As to the piggy bank, at the hearing on May 19, 2023, the Court suggested that it could simply allow plaintiffs to amend the suit to add their son as a plaintiff.  Then, Safeguard agreed to withdraw this contention.  Therefore, the contention is moot.

At the motions hearing, I noted that the parties did not address choice of law.  But, in ECF 156 at 39-41, I observed that, in this diversity case, Maryland substantive law applies to plaintiffs' claims.  *See id*. at 40 ("In tort actions, Maryland adheres to the rule of *lex loci delicti*, meaning it applies the substantive law of the state where the wrong occurred. *Ben-Joseph*, 529 F. Supp. 2d at 606).  Presumably, this includes the law concerning damages.  However, federal law governs evidentiary issues. *See Blake v. Columbia Gas Transmission, LLC*, 3:19-0847, 2021 WL 4255619, at *2 (S.D.W. Va. Sept. 17, 2021).  And, the federal rules of procedure apply to determine "whether there is sufficient evidence to create a jury issue of those essential substantive elements of the action, as defined by state law[.]"  *Fitzgerald v. Manning*, 679 F.2d 341, 346 (4th Cir. 1982); *accord Jordan v. Iverson Mall Ltd. P'ship*, GJH-14-37, 2018 WL 2391999, at *5 (D. Md. May 25, 2018); *Osunde v. Lewis*, 281 F.R.D. 250, 260 (D. Md. 2012); *Young v. United States*, 667 F. Supp. 2d 554, 561 (D. Md. 2009).

The parties have not provided the Court with much in the way of the law concerning damages. "Compensatory damages can be divided into 'economic' and 'noneconomic damages.'" *Eastern Shore Title Co. v. Ochse*, 453 Md. 303, 354, 160 A.3d 1238, 1256 (2017). Economic damages are sometimes referred to as "pecuniary" damages. *Choudhry v. Fowlkes*, 243 Md. App. 75, 85, 219 A.3d 107, 113 (2019), *aff'd*, 472 Md. 688, 248 A.3d 298 (2021). Economic damages refer to those which "will not be awarded without proof of pecuniary loss." *Eastern Shore Title Co.*, 453 Md. at 354, 160 A.3d at 1256 (internal citations omitted). And, "economic damages . . . must be established with reasonable certainty." *Choudhry*, 243 Md. App. at 101, 219 A.3d at 122 (reversing award of $500,000 in economic damages in wrongful death claim); *see Nat. Prod. Sols., LLC v. Vitaquest Int'l, LLC*, CCB-13-436, 2014 WL 6383482, at *6 (D. Md. Nov. 13, 2014) (To be recoverable, economic damages must be proven "'with reasonable certainty, and may not be based on speculation or conjecture.'") (quoting *Asibem Assocs., Ltd. v. Rill*, 264 Md. 272, 276, 286 A.2d 160, 162 (1972)).

Noneconomic damages include compensation "(a) for bodily harm, and (b) for emotional distress." *Eastern Shore Title Co.*, 453 Md. at 354, 160 A.3d at 1256 (internal citations omitted) (alterations in *Eastern Shore Title Co.*). And, in Maryland, "a right to recovery exists for emotional distress 'if it results in physical injury.'" *Wheeling v. Selene Finance LP*, 473 Md. 356, 393, 250 A.3d 197, 219 (2021) (quoting *Vance v. Vance*, 286 Md. 490, 494, 408 A.2d 728, 730 (1979).

The Fourth Circuit has said: "In a long line of decisions in this circuit, we have emphasized that proof of causation must be such as to suggest 'probability' rather than mere 'possibility,' precisely to guard against raw speculation by the fact-finder. Where . . . resolution of the causation issue is dependent upon expert opinion testimony, it must meet that standard." *Sakaria v. Trans World Airlines*, 8 F.3d 164, 172-73 (4th Cir. 1993) (internal citations omitted). But, "[d]etermining

whether the particular injury asserted requires expert testimony to establish causation is often a difficult and fact-sensitive undertaking." *Neal v. United States*, 599 F. Supp. 3d 270, 291 (D. Md. 2022).

Under Maryland law, a plaintiff alleging property damage may seek to recover for the loss in the value of the property or the cost of repair or replacement of the property, "subject to the limitation that if cost of restoration is disproportionate to diminution in value, then damages will be measured by the difference in value before and after the harm unless there is a reason personal to the owner for restoring the original condition." *Regal Constr. Co. v. West Lanham Hills Citizen's Ass'n, Inc*., 256 Md. 302, 305, 260 A.2d 82, 84 (1970). A plaintiff may also be entitled to recover loss of personal enjoyment and use of the land if he cannot occupy or rent the land due to the damage. *See Superior Constr. Co. v. Elmo*, 204 Md. 1, 11–12, 102 A.2d 739, 743–44 (1954); *cf. KeraLink International, Inc. v. Geri-Care Pharmaceuticals Corporation*, 60 F.4th 175, 184 (4th Cir. 2023) (discussing economic loss in the context of a products liability case); Dan B. Dobbs, Paul T. Hayden & Ellen M. Bublick, *The Law of Torts* § 605 (2d. ed. July 2022 Update) (describing "stand-alone economic harms or losses" as costs to a plaintiff not arising from personal injury or "damage to tangible property"); *A.J. Decoster Co. v. Westinghouse Elec. Corp*., 333 Md. 245, 634 A.2d 1330, 1332 (1994) ("Economic losses include such things as the loss of value or use of the product itself, the cost to repair or replace the product, or the lost profits resulting from the loss of use of the product.").

As mentioned, the parties dispute whether the Property was vacant when the entries occurred. They also dispute the extent to which the Property was damaged; the extent to which plaintiffs' possessions were stolen, damaged, or destroyed; and the extent to which defendants are responsible for any losses or damages that plaintiffs suffered. "It is the plaintiff's burden to prove

damages through the use of evidence such as 'receipts, copies of checks, or any other means of computation that would allow a factfinder to value his claimed loss.'" *Neal*, 599 F. Supp. 3d 270 at 301 (quoting *Nguti v. Safeco Ins. Co.*, PX-15-742, 2017 WL 2778821, at *4 (D. Md. Jun. 27, 2017)).

The case of *Taylor v. King*, 241 Md. 50, 51, 213 A.2d 504 (1965), is informative. There, the Maryland Court of Appeals[20] discussed the measure of damages pertaining to a vehicle that was damaged in a collision but not completely destroyed. The Court established that, to determine the amount of compensation in that circumstance, "it is necessary to know at least three facts: the cost of repairs, the value of the vehicle immediately before the injury, and the value of the vehicle immediately after the injury." *Kruvant v. Dickerman*, 18 Md. App. 1, 3 (1973) (explaining *Taylor*).

In *Taylor*, the plaintiff purchased a new car just two months before the accident, for the sum of $3,192.49. *Id.* When the collision occurred, the vehicle was worth $3,127.43. As a result of the collision, the estimate of repairs totaled $1,118.21, but the owner decided not to repair the vehicle. Instead, he sold the car for salvage for $975. The trial court entered a judgment in the amount of $2,182.43, representing the difference between the value of the automobile before and after injury, established by deducting the salvage price, $975, from the depreciated value, $3,127.43, and adding the $30 towing charge. *Id.* at 51.

---

[20] In Maryland's general election of November 2022, the voters of Maryland approved a constitutional amendment to change the name of the Maryland Court of Appeals to the Supreme Court of Maryland. And, the voters also approved changing the name of the Maryland Court of Special Appeals to the Appellate Court of Maryland. These changes went into effect on December 14, 2022. *See* Press Release, Maryland Courts, Voter-approved constitutional change renames high courts to Supreme and Appellate Court of Maryland (Dec. 14, 2022), https://www.courts.state.md.us/media/news/2022/pr20221214#:~:text=Effective%20immediately%2C%20the%20Court%20of,the%20Appellate%20Court%20of%20Maryland. However, to avoid confusion, I will refer to the Maryland courts by the names that were in effect when the cited cases were decided.

On appeal, the defendant, who was the at-fault driver, claimed the court should only have awarded $1,148.21, *i.e.*, the sum of the estimated cost of repairs and the towing charge. The court noted that the parties' "point of disagreement" did not pertain to "the question of the measure of damages . . . ." *Id.* at 52. Both sides seemed to agree that, if the vehicle could not be repaired to its former condition, the measure of damages would be the difference between the market value of the vehicle immediately before and after the injury. *Id.* But, the issue concerned the question of whether the vehicle "could reasonably have been restored, by repairing it, to substantially the same condition that it was in before the accident." *Id.* The court observed: "Until now, we have not had to consider a case in which there was a possibility that the injured automobile could not be restored to its prior condition." *Id.* at 54. Because the court was of the view that there were insufficient facts to determine whether "the damaged automobile could reasonably have been restored by repairs to substantially the same condition that it was in before the accident . . .", *id.* at 52, it ordered a remand "for the taking of additional evidence limited to the question of whether the automobile could have been substantially restored at reasonable cost . . . ." *Id.* at 53.

For the guidance of the trial court and the parties on remand, the court proceeded to consider the measure of damages. Based on its review of several cases, the court said that it is "clear that the rule[] in Maryland with respect to the measure of damages for injury to a motor vehicle, which has not been completely destroyed, is the reasonable cost of the repairs necessary to restore it to substantially the same condition that it was in before the injury, provided the cost of repairs is less than the diminution in market value due to the injury." *Id.* at 54-55. Conversely, the *Taylor* Court stated that, "when the cost of restoring a motor vehicle to substantially the same condition is greater than the diminution in market value, the measure of damages is the difference between the market value immediately before and immediately after the injury." *Id.* at 55; *see*

36

*Berry v. Queen*, 469 Md. 674, 693, 233 A.3d 42, 53 (2020) (finding *Taylor* applicable when determining the proper measure of damages in a rental car accident); *Fred Frederick Motors, Inc. v. Krause*, 12 Md. App. 62, 66-67 (1971): ("[I]f the plaintiff can prove that after repairs his vehicle has a diminished market value from being injured, then he can recover in addition to the cost of repairs the diminution in market value, *provided the two together do not exceed the diminution in value prior to the repairs*.") (emphasis added); *see also Spotswood v. Hertz Corporation*, WMN-16-1200, 2016 WL 6879938, at \*5-6 (D. Md. Nov. 22, 2016) (finding, under *Krause*, that diminution in market value may be recovered in a rental car case).

In this case, plaintiffs seek damages for harm to the Property allegedly caused by defendants.  Therefore, information related to the value of the Property at the time, and the diminution in value of the Property as a result of the alleged conduct of defendants, are relevant to plaintiffs' claims.  However, plaintiffs have provided no documents or evidence to support such claims, nor have they provided any documents or evidence showing that any decrease in the Property's value was caused by defendants.

Moreover, to support a claim of diminution in property, expert testimony is generally required, usually from a real estate appraiser.  *See Exxon Mobil Corp. v. Albright*, 433 Md. 303, 418, 71 A.3d 30, 100 (2013) ("Expert testimony is required ordinarily to establish diminution in property value . . . ."); *Ray v. Mayor of Balt.*, 430 Md. 74, 98, 59 A.3d 545, 559 (2013) (ruling that expert testimony was required to establish loss in value of property as petitioner was merely speculating as to what he thought it should be worth); *Rill*, 264 Md. 272 at 279 (declining to award actual damages because retained expert was unfamiliar with the property and was unfamiliar with comparable properties).

Furthermore, expert testimony is generally required to prove that a defendant's conduct proximately caused any loss in value. *See RCHFU, LLC v. Marriott Vacations Worldwide Corp.,* No. 16-CV- 01301-PAB-GPG, 2020 WL 6063895, at *2 (D. Colo. Oct. 13, 2020) (collecting cases and noting that multiple courts have held that expert testimony is required to establish that a defendant's alleged conduct caused a decrease in a plaintiff's property value).   As the court explained in *Blake*, *supra*, 2021 WL 4255619, at *2, 3, property owners may know when and how much they paid for their property, and might know an estimate of its current value, but a calculation of a loss of value caused by a specific event is a "complicated analysis" that is beyond the knowledge of the average property owner.[21]

For example, as the court explained, the effect of a specific occurrence on the value of property "may entail a pre-and post-comparative market analysis, with consideration of whether other outside factors impacted the value.   Property values often are affected by such things as housing inventory levels, demand for housing, interest rates, area development, and alternative uses for the property."  *Id.* at *2.  And, "[e]valuating these various factors and determining their impact is simply not something the average property owner can do.  Instead, it requires an expert who is trained to make such calculations and property appraisals." *Id.*  The *Blake* Court concluded that expert testimony was necessary as to a claim of diminution in value caused by a specific event. *Id.*

Plaintiffs cannot simply give vague, "wildly speculative calculations" as to their damages. *Blake*, 2021 WL 4255619, at *4.  Without an appraisal (or other evidence) that shows a decrease in the Property's value as a result of defendants' conduct, and that defendants were the proximate

---

[21] As the court explained, the precise issue is evidentiary in nature, and not one of State substantive law.  Therefore, federal evidentiary rules applied.  *Id.* at *2.

cause of the decrease, the jurors will be left to speculate.  And, as discussed, *infra*, the time for disclosing an expert has long passed.

As mentioned, the defense insists that an expert is necessary for plaintiffs to claim damages for mold. Case law supports that contention.

Several courts have ruled that, in a case involving a claim of mold, expert testimony is required as to causation.  *See* F.R.E. 702; *see, e.g., Jones v. NVR Incorporation*, No. CV 20-453 (CKK), 2022 WL 951340, at *9 (D.D.C. Mar. 29, 2022) (concluding that expert testimony was required to show whether any defect in the home caused mold as the subject matter of mold and causation is "so distinctly related to some science, profession, or occupation as to be beyond the ken of the average layperson."); *see also Sanders v. Rosenberg,* No. CIV.A. 06-1406 (NLH), 2008 WL 1732980, at *3 (D.N.J. Apr. 10, 2008) ("[I]n cases concerning torts such as mold exposure, testimony of an expert is required, in particular with regard to causation."); *O'Hara v. Travelers,* No. 2:11-CV-208-KS-MTP, 2012 WL 3062300, at *14 (S.D. Miss. July 26, 2012) ("T]o prevail on a claim for mold-caused property damages, a plaintiff must offer expert testimony demonstrating the cause of the alleged mold infestation."); *Munguia v. State Farm Lloyds*, No. CV M-02-115-H, 2006 WL 8448823, at *1 (S.D. Tex. Oct. 19, 2006), *aff'd sub nom. Sailer v. State Farm Lloyds*, 268 F. App'x 367 (5th Cir. 2008).

In particular, the court in *Munguia* explained, 2006 WL 8448823, at *1:

[R]ecent case law teaches that expert testimony is required to establish the specific cause of mold damage to personal property. Since mold contamination has many possible sources, lay testimony and opinion is simply not sufficient to sustain a given plaintiff's burden of proving that mold damage to a particular piece of personal property was caused by the accidental discharge or leakage of water from the dwelling's plumbing or heating and air conditioning system as would be required . . . .

In this case, the only evidence of mold in the Property comes from plaintiffs, who claim, in essence, that they know mold when they see it. And, they also contend that the mold was caused by the conduct of defendants. But, to the Court's knowledge, plaintiffs have not tested for mold or had a professional verify that the Property actually contains mold, or what caused it.

Under F.R.E. 701, a lay witness may offer opinion testimony if, among other things, it is "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Thus, in accordance with Rule 701(a), a lay witness may offer an opinion only if it is "rationally based on [his] perception." *United States v. Smith*, 962 F.3d 755, 766 (4th Cir. 2020) (internal quotations omitted), *cert. denied*, ___ U.S. ___, 141 S. Ct. 930 (2020).

Rule 701 was amended in 2000, adding subsection (c), but the addition "did not work a sea change to the rule." *United States v. Perkins*, 470 F.3d 150, 155 n.8 (4th Cir. 2006). The amendment "'serves . . . to prohibit the inappropriate admission of expert opinion under Rule 701 . . . .'" *Id.* (quoting *United States v. Garcia*, 291 F. 3d 127, 139 n.8 (2d Cir. 2002)). Moreover, the amendment "ensures that a party will not evade the expert witness disclosure requirements set forth in Fed. R. Civ. P. 26 and Fed. R. Cim. P. 16 by simply calling an expert witness in the guise of a layperson." Fed. R. Evid. 701 advisory committee note to 2000 amendment. In other words, "'Rule 701 forbids the admission of expert testimony dressed in lay witness clothing.'" *United States v. Johnson*, 617 F.3d 286, 293 (4th Cir. 2010) (quoting *Perkins*, 470 F.3d at 156).

Thus, for a witness to provide an opinion that is "based on scientific, technical, or other specialized knowledge", the witness *must* be presented as an expert pursuant to Rule 702. *Smith*, 962 F.3d at 766. However, "the line between lay opinion testimony under Rule 701 and expert testimony under Rule 702 'is a fine one'[.]" *Perkins*, 470 F.3d at 155 (citation omitted); *see United States v. White*, 492 F.3d 380, 401 (6th Cir. 2007) (citing cases).

Accordingly, plaintiffs may describe a substance in their home that they claim appeared after the alleged incidents.  They can also offer their belief that it is mold.  But, they cannot testify that it *is* mold or that defendants are the cause of the mold in their home.

As to other alleged damages, Safeguard concedes that expert testimony is not necessarily required for proof of damages, and "that a plaintiff may, in some circumstances, provide the requisite testimony."   ECF 217 at 7.   That said, Safeguard maintains that "damages must be reasonably certain and not speculative."   *Id*. (citing *Primoff v. Warfield*, 495 F. App'x 293, 298-99 (4th Cir. 2012)).

It is true that, under Maryland law, economic damages must be established "'with reasonable certainty, and may not be based on speculation or conjecture.'" *Nat. Prod. Sols.*, 2014 WL 6383482, at *6 (quoting *Rill*, 264 Md. at 276).   Resolution of the damage claims turns on questions of fact.

Trial has yet to begin and the record has not fully been developed.  The Court is not in a position to determine whether plaintiffs will present sufficient evidence to meet the legal requirements as to the alleged damages to their personal property.  Plaintiffs will be permitted to make claims as to damages to their personal property related to defendants' alleged actions.  And, defendants will have ample opportunity at trial to challenge plaintiffs' evidence.

**5. Evidence that Safeguard is Vicariously Liable for the Alleged Acts of Alpha**

Safeguard argues that plaintiffs should be precluded from offering evidence and making arguments that it is vicariously liable for the alleged acts of its subcontractor, Alpha, or its owner, Edwin Twesigye.  ECF 189 at 24.  Safeguard's request to exclude evidence as to vicarious liability comes after Safeguard failed to raise the issue at summary judgment, even though the issue had been raised by PNC in its initial summary judgment motion.

As explained by the Court in ECF 156 at 54, "[l]itigants may invoke the doctrine of respondeat superior as a means of holding an employer, corporate or otherwise, vicariously liable for the tortious conduct of an employee, where it has been shown that the employee was acting within the scope of the employment relationship at that time." *S. Mgmt. Corp. v. Taha*, 378 Md. 461, 480-81 (2003); *see Barclay v. Briscoe*, 427 Md. 270, 282 (2012); *Embrey v. Holly*, 293 Md. 128, 134 (1982). And, I have previously stated that, "[t]his is an issue that can be addressed at trial." ECF 185 at 9.

In my Memorandum of October 4, 2022, I noted that Safeguard has already "had ample time to assert the issue of vicarious liability in its renewed motion for summary judgment." *Id*. at 185 (citing ECF 169 at 2). The Memorandum concluded by stating that "Safeguard has not demonstrated adequate diligence to justify granting Safeguard a second bite at the summary judgment apple." ECF 185 at 9.

Motions in limine pertain to evidence, not to claims. As plaintiffs correctly note, Safeguard's argument functions as "another Motion for Leave to File A Second Motion for Summary Judgment and/or a Motion to Reconsider in disguise and yet another attempt to circumvent Safeguard's failure to raise these issues not only in its Motion for Summary Judgment, but [also] in its Renewed Motion for Summary Judgment." ECF 206 at 1.

To be sure, at trial Safeguard may challenge the admission of evidence and/or challenge the submission of the claim of vicarious liability to the jury. But, at this juncture, I decline to revisit the issue. Rather, I will reserve for trial any ruling on the question of the admissibility of evidence as it relates to the matter. And, at the appropriate time, I will determine whether the issue warrants presentation to the jury.

**B. Plaintiffs' Motion**

Plaintiffs have moved for an order excluding from evidence the use of "unfairly prejudicial, repetitive and cumulative pictures of the Property." ECF 192 at 1. In their Motion, plaintiffs note that Safeguard's renewed motion for summary judgment (ECF 109) included several exhibits of pictures of the Property "that were basically pictures of the same scene taken over and over again." ECF 192 at 1.

In particular, Safeguard submitted approximately 70 photographs of the Property taken by Mr. Twesigye on October 24, 2017 and October 25, 2017. *See* ECF 109-4 at 4-73. The photographs include a Baltimore County code citation taped to the door. *Id*. at 4- 5. Others show leaves, weeds, and other debris that had accumulated in the yard and on the roof, *id*. at 6-29; a large beehive hung right above the front door, *id*. at 22; that the refrigerator was empty, except for one can, *id*. at 30; the kitchen cabinets and cupboards were mostly bare, *id*. at 31; some furniture was covered by tarps, and some photographs show cans of paint. *Id*. at 57-61. Moreover, possessions, furnishings, and debris were piled or scattered around the house, in a manner that does not suggest the house was occupied or even habitable. *Id*. at 32-73.

Plaintiffs have described the conditions depicted in the photographs as "staged," and suggest that the posting of the Baltimore County citation may have been as well. ECF 134 at 17. Plaintiffs also note that simply because the citation was dated September 26, 2017, this does not mean it was posted at that time. *Id*. But, they have produced absolutely no evidence to support their bald assertions as to fabrication of evidence. Nor do they suggest any reason that would lead defendants to fabricate evidence as to the condition of the Property, aside from a cursory argument that Safeguard charges PNC more for securing a vacant property and thus has a financial incentive to describe property as vacant. *See id*. at 17, 31.

43

As to their motion in limine, plaintiffs state that the pictures labeled "00723 and 00724 are pictures of the same scene.  So are pictures 00736 and 00741, 00748 and 00749, 00760 and 00761, 00765, 00775, 0076, 01006, 01007, 01008, and 010114, 0169, 01070 and 01073, 10056 and 01057, 00993 and 00995, 01166, 01167 and 01168, etc."  ECF 192 at 2.  Consequently, plaintiffs argue that "[a]ll of these pictures are cumulative, because they show no real differences and apparently therefore [sic] will be used to mislead the jury to induce a decision on purely emotional basis and to harm the Plaintiffs.  *Id*.

Defendants concede that some photographs "appear to be substantially the same, if not identical", and they state that, "[t]o the extent that these photographs, or any other photographs, show the *exact same* scene and are taken on the same day, Defendants [assert that they] do not intend to introduce both sets of these photographs into evidence."  ECF 195 at 3 n.1. (emphasis in original).  But, in general, defendants maintain that the photographs "will assist the trier of fact in determining whether the Property was vacant at the time of the fall and winter 2017 entries."  ECF 195 at 1.  They also contend that the photographs "will be probative of Plaintiffs' damages claims."  *Id*.

As noted, a primary issue for trial is whether the Property was vacant at the time of the entries.  *See, e.g.*, ECF 156 at 13 ("The parties dispute the extent to which either plaintiff actually resided at the Property in the fall and winter of 2017 when the entries occurred.")  And, as defendants note, the photographs "depict the house as it existed during the relevant time period."  ECF 195 at 5.  Therefore, the photographs are quite relevant as to whether the Property was occupied or habitable at the relevant time.   ECF 156 at 69.

As an initial matter, it would be premature for the Court to determine that the photographs at issue are cumulative, as no evidence has yet been admitted.  Furthermore, as mentioned, "'where

evidence is probative, "the balance under Rule 403 should be struck in favor of admissibility, and evidence should be excluded only sparingly."'" *Miller*, 61 F.4th at 429 (citations omitted). Plaintiffs have not alleged that "'there is a genuine risk that the emotions of the jury will be excited to irrational behavior, and that this risk is disproportionate to the probative value of the offered evidence.'" *United States v. Nelson*, DKC 20-38, 2022 WL 16637553 at *2 (D. Md. Nov. 2, 2022) (quoting *Powers*, 59 F.3d at 1468).

Accordingly, the Court shall deny Plaintiffs' Motion.  However, I will entertain specific objections at the appropriate points at trial.  *See, e.g.*, *Humbert v. O'Malley*, WDQ-11-0440, 2015 WL 1569182, at *4 (D. Md. Apr. 6, 2015) (deferring ruling on motions in limine involving "questions of relevance and prejudice concerning speculative arguments and evidence"), *judgment granted as a matter of law sub nom. Humbert v. Jones*, WDQ-11-0440, 2015 WL 4042327 (D. Md. June 22, 2015), *rev'd on other grounds sub nom. Humbert v. Mayor and City Council of Baltimore*, 866 F.3d 546 (4th Cir. 2017), *cert. denied*, ___ U.S. ___, 138 S. Ct. 2602 (2018) (Mem.).

### C. Safeguard's Motion as to Experts and Plaintiffs' Renewed Motion

On March 30, 2023, plaintiffs filed a renewed motion for belated disclosure of experts. ECF 199.  Then, as now, trial is set for June 5, 2023.  Defendants contend that, "to allow Plaintiffs to identify experts would be highly prejudicial to Defendants given that trial is scheduled to begin on June 5, 2023."  ECF 200 at 5.

As discussed, at the hearing on August 31, 2022, the Court allowed plaintiffs the opportunity to move for an extension of discovery so that they could name experts.  ECF 179; ECF 180.  And, they so moved on September 22, 2022.  ECF 181.  They argued for the belated disclosure based on Rule 26(a)(2)(i), which allows a party to disclose experts "at least 90 days

before trial." *Id.* at 1.  However, on September 30, 2022, they moved to withdraw their motion. ECF 183.  And, by Order of October 3, 2022, I granted the Motion.  ECF 184.  When plaintiffs withdrew ECF 181, they elected to forgo the opportunity afforded by the Court.  ECF 183.

As relevant here, Fed. R. Civ. P. 26(a)(2) provides:

(2) *Disclosure of Expert Testimony.*

(A) *In General.*  In addition to the disclosures required by Rule 26(a)(1), a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705.

(B) *Witnesses Who Must Provide a Written Report.*  Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. The report must contain:

(i) a complete statement of all opinions the witness will express and the basis and reasons for them;

(ii) the facts or data considered by the witness in forming them;

(iii) any exhibits that will be used to summarize or support them;

(iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;

(v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

(vi) a statement of the compensation to be paid for the study and testimony in the case.

\*        \*        \*

(D) *Time to Disclose Expert Testimony.*  A party must make these disclosures at the times and in the sequence that the court orders. Absent a stipulation or a court order, the disclosures must be made:

(i) at least 90 days before the date set for trial or for the case to be ready for trial; or

(ii) if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C), within 30 days after the other party's disclosure.[22]

---

[22] Fed. R. Civ. P. 26(a)(2)(C) imposes modified disclosure requirements for certain types of expert witnesses who are not required to provide a written report. I have omitted this section.

"The purpose of Rule 26(a) is to allow litigants 'to adequately prepare their cases for trial and to avoid unfair surprise.'" *Bresler*, 855 F.3d at 190 (quoting *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 396 (4th Cir. 2014)).   Indeed, "Rule 26 disclosures are often the centerpiece of discovery in litigation that uses expert witnesses." *Saudi*, 427 F.3d at 278.

Plaintiffs have not identified any proposed experts.   Nor have they provided any expert reports, in accordance with the Federal Rules.

The Renewed Motion is a single page and does not provide any legal basis to support the belated request to identify experts.   Moreover, as defendants note, "Plaintiffs fail to articulate any grounds to satisfy the 'excusable neglect' standard for their belated filing under Federal Rule of Civil Procedure 6(b)(1)(B)."   ECF 200 at 4.

As the Fourth Circuit stated in *Carr v. Deeds*, 453 F.3d 593, 605 (2006), *abrogated on other grounds by Wilkins v. Gaddy*, 559 U.S. 34 (2010):

> Every litigant in federal court is plainly entitled under Rule 26(a)(2)(B) to be given the information spelled out therein, and none shoulder the burden to independently investigate and ferret out that information as best they can and at the expense of their client . . . .   The available penalty for failure to comply with Rule 26(a)(2)(B) is equally plain, and if a litigant refuses to comply with the requirements of the rule, he does so at his peril.

Nor does Rule 26(a)(2)(D)(i) assist the plaintiffs.   This is because they filed the Renewed Motion on March 30, 2023, less than 90 days before trial.   And, even in the absence of a deadline set by the court, a party must make the required disclosures "at least 90 days before the date set for trial . . . ." *Id.*

In sum, there has been extensive discovery in this case as well as summary judgment motion practice.   Discovery has long been closed, and trial is imminent.   It is simply unreasonable for plaintiffs to attempt to name any expert at the proverbial eleventh hour and 59 minutes.

Deadlines must be taken seriously.  *See Pennington Partners, LLC v. Midwest Steel Holding Co.*, 271 F.R.D. 462, 464 (D. Md. 2010); *cf. Hare v. Opryland Hospitality, LLC*, DKC-09-599, 2010 WL 3719915, at *3 (D. Md. 2010) ("[A] court's scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel [or a party] without peril.")).  As the Fourth Circuit said in *Saudi*, 427 F.3d at 278: "A party that fails to provide [Rule 26(a)] disclosures unfairly inhibits its opponent's ability to properly prepare, unnecessarily prolongs litigation, and undermines the district court's management of the case."

To be sure, the Court is mindful of plaintiffs' pro se status.  But, self-represented litigants are not excused from following the Federal Rules of Civil Procedure or the Local Rules. *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (noting a *pro se* litigant must follow the same rules of procedure that govern other litigants); *Burgs v. Sissel*, 745 F.2d 526, 528 (8th Cir. 1984) (per curiam) (same).  To the contrary, "even pro se litigants are expected to comply with time requirements and other procedural rules 'without which effective judicial administration would be impossible.'"  *Dancy v. Univ. of N. Carolina at Charlotte*, No. 3:08-CV-166-RJC-DCK, 2009 WL 2424039, at *2 (W.D.N.C. Aug. 3, 2009) (quoting *Ballard v. Carlson*, 882 F.2d 93, 96 (4th Cir. 1989)); *see Plaisir v. United States*, No. 3:16cv131, 2016 WL 11247641, at *1 (N.D W.Va. Oct. 24, 2016) ("*Pro se* litigants must follow rules of procedure, including local rules."); *Nesbitt v. Riley*, No. 0:14–2788–RMG–PJG, 2015 WL 1517505, at *3 (D.S.C. Apr. 1, 2015) ("Discovery in civil cases filed in this court is governed by the Federal Rules of Civil Procedure. These rules are applicable to all litigants including those who are proceeding *pro se*."); *Cox v. Deal*, C/A No. 2:09–02715–DCN–BM, 2011 WL 3418397, at *2 (D.S.C. Aug. 3, 2011) ("Even pro se litigants, however, must follow the procedural rules of the court.").

The Court knows of no ground that would allow plaintiffs to name expert witnesses at this late stage in the litigation.  Plaintiffs were provided more than enough time to properly disclose an expert.  If the Court were to grant plaintiffs' request, it would undoubtedly lead to a significant delay in the readiness of the case for trial.  This is because defendants would then be entitled to designate expert witnesses, depose plaintiffs' expert(s), and/or consider a *Daubert* challenge to plaintiffs' expert(s).  *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

I cannot justify the relief sought in the Renewed Motion.  Therefore, I shall deny the Renewed Motion.

However, this ruling does not foreclose plaintiffs' right to call Dr. Best, her dermatologist, as a fact witness.  For example, the ruling does not preclude Dr. Best from testifying as to the fact that she treated plaintiff, the condition for which plaintiff was treated (i.e., a rash), the name of the rash, the date of treatment, and the like.  But, Dr. Best cannot cross the line by rendering an opinion as to causation of the rash.

## V. Conclusion

For the foregoing reasons, I shall grant Safeguard's Motion in part and deny it in part.  ECF 189.  In particular, I shall exclude evidence relating to prior wrongdoing, culpability, or specific bad acts on the part of the defendant in 2013 or 2015.  Further, because plaintiffs have not properly identified any proposed experts, or produced any expert reports, they are precluded from presenting expert testimony at trial.  Therefore, I shall deny the Renewed Motion.  ECF 199.  And, because of the lack of expert testimony, I shall exclude opinion evidence and argument by plaintiffs as to diminution in value of the Property; that defendants' conduct caused mold in the Property; and that Ms. Norris's rash was caused by defendants' conduct.

However, where appropriate, plaintiffs may present lay opinion evidence regarding alleged damages to personal property caused by defendants.  Additionally, plaintiffs may pursue their claim that Safeguard is vicariously liable for the alleged acts of its subcontractor, Alpha, subject to a proper evidentiary basis.[23]  And, I shall deny Plaintiffs' Motion.  ECF 192.

An Order follows, consistent with this Memorandum Opinion.


Date:  May 26, 2023                                    _____/s/_____
                                                       Ellen L. Hollander
                                                       United States District Judge

---

[23] This is not a ruling on whether the evidence will be sufficient to allow the claim to go to the jury.